Larry W. NELSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 6222.

Court of Appeals of Alaska.

Sept. 24, 1982.

James K. Tallman, Anchorage, for appellant.

W. H. Hawley, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

OPINION

COATS, Judge.

On December 14, 1980, Larry W. Nelson was involved in an automobile accident in Anchorage near the intersection of Dimond Boulevard and the New Seward Highway. Upon their arrival at the scene of the accident, the police asked Nelson if he would submit to a breathalyzer examination, and he refused. Nelson was then transported to Providence Hospital for treatment of injuries received in the accident.

At the hospital, Nelson was treated in the emergency room by Dr. Donald Gene Hudson. Without any prompting from the police, Dr. Hudson ordered a blood test for alcohol,[1] though he neither requested authorization from Nelson to perform such a test nor informed him that he was going to do so. In fact, Nelson testified that due to the injuries to his head he was never aware of any blood sample being drawn from his body. Further, Nelson testified that he would have refused permission for such a test had he been asked.

At trial, the state sought to introduce as evidence the results of this blood test which showed Nelson's blood alcohol concentration to be .184 percent. Nelson moved to suppress this evidence prior to trial, and he objected to its introduction at trial. The trial court ruled the test results admissible, and Nelson was convicted of Driving While Intoxicated, AS 28.35.030(a)(1). He now renews his challenges on appeal to this court. We affirm.

Nelson first argues that once he refused to submit to a breathalyzer test, it was improper to subject him to a blood alcohol test. In making this argument, Nelson looks to Alaska's Implied Consent Statutes, AS 28.35.031 and 28.35.032, and he relies on *Anchorage v. Geber,* 592 P.2d 1187, 1191 (Alaska 1979), wherein it was held that once a breath test is refused, no other chemical test can be administered. While *Geber* does

1. At trial, Dr. Hudson testified to the important need to test for alcohol when treating a head injury. Apparently, it is crucial to ascertain whether a patient is suffering from the effects of alcohol or from a serious injury requiring the immediate attention of a neurosurgeon.

in fact stand for this proposition, we do not think it controls the disposition of this case.

The Implied Consent Statutes are not controlling here because the blood tests were conducted by private parties acting independently from the police. This distinction is supported by decisions from other jurisdictions. For instance, in *State v. Enoch,* 21 Or.App. 652, 536 P.2d 460 (1975), the defendant was taken to the hospital following an accident and a blood sample was taken. Shortly thereafter the police arrived and they were given some of the sample; they tested the sample and found it contained .30 percent alcohol. The Oregon court ruled the test results admissible, rejecting the defendant's contention that the implied consent law required his consent to the test. In so holding the court observed:

> In his investigation, [the police officer] simply came upon the evidence taken by a third person, and when it was checked out it created a case against and cause for arrest of defendant.... [I]f an independent private citizen finds evidence and turns it over to the police, the evidence is legitimate.

*Id.* at 461 (citations omitted). This holding was later amplified in *State v. Hilton,* 49 Or.App. 927, 620 P.2d 970, 972 (1980), where the court said:

> In *Enoch,* this court held that the defendant's consent was not required before a blood test, taken by hospital personnel while the defendant was unconscious, could be introduced. We found that consent to the search which may be involved in the taking of blood was not required because the taking of the blood was not instigated or conducted by the police officer. *Enoch* held the consent provisions of the statute were not applicable in that situation, because no consent was necessary to validate the taking of the blood.

In *Turner v. State,* 258 Ark. 425, 527 S.W.2d 580 (1975) the court also concluded that a blood test conducted by a physician who acted independently of the police was admissible apart from the implied consent statutes. The court said (*id.* at 587–88):

> Since Dr. Harper did not act at the direction of, or by prearrangement with, any police officer, the taking of the sample did not constitute an unreasonable search and seizure.... Thus, the matter of appellant's implied consent is wholly immaterial, and the admissibility of the evidence of the testing of the blood sample was in no way dependent upon Ark. Stat.Ann. § 74–1045.

We find the reasoning of these cases to be persuasive. Had the police in any way directed the personnel at Providence Hospital to take the blood sample and administer the blood test, then the policies embodied in AS 28.35.032(a) would have been applicable, and the results of the blood test would have been inadmissible. Here, however, the blood test was administered for diagnostic purposes independently from the police. Accordingly, the fact that Nelson refused to submit to a police breathalyzer examination should not stand as an obstacle to the admission of the results of the hospital administered test.

Lastly, Nelson argues that the patient-physician privilege of Alaska Rule of Evidence 504(b) should have operated to preclude introduction of the blood test result. Nelson, however, overlooks the language of Evidence Rule 504(d)(7) which expressly states that the physician-patient privilege does not apply in criminal proceedings. We therefore find no error in the admission of the blood test results.

AFFIRMED.