**Manuel Robert PENA, Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 6174.**

Court of Appeals of Alaska.

May 6, 1983.

---

George E. Weiss, Whittier, for appellant.

Donald W. McClintock, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

Manuel Robert Pena, Jr., appeals his conviction and sentence for manslaughter. *See* AS 11.41.120(a)(1). There is little dispute as to the facts relating to the principal issue raised on appeal.

Shortly before 11 p.m. on September 2, 1980, a pickup truck driven by Pena collided with an automobile at the intersection of C Street and Potter Road in Anchorage. Pena had been driving south on C Street, while the other automobile, driven by Chris Sciscente, was headed west on Potter Road when the collision occurred. Billy S. Downey, a passenger in Sciscente's automobile, was killed.

Anchorage police officers called to the scene of the accident observed that Pena had apparently been drinking; Pena was arrested and taken to the police station, where he refused a request to take a breathalyzer examination. Police then obtained a search warrant authorizing seizure of a sample of Pena's blood for testing. Pena was taken to the Alaska Hospital at approximately 2:45 a.m. on September 3, 1980, where a sample of his blood was drawn.

The state ultimately charged Pena with manslaughter, and his case proceeded to trial before a jury beginning on March 2, 1981. During trial, evidence was admitted by the state showing that Pena's blood sample was found to contain an alcohol level of .213%. A pathologist from the Alaska Hospital, Dr. Probst, testified that the .213% reading would have yielded a blood alcohol level of .273% at the time of the fatal collision, about four hours before the blood sample was drawn. Dr. Probst also testified about the deleterious effect on a person's ability to drive of such substantial quantities of alcohol. On March 10, 1981, Pena's jury returned a verdict finding him guilty as charged.

Pena's primary argument on appeal is that evidence of his blood alcohol level was improperly obtained and should therefore have been suppressed at trial. Pena does not rely on constitutional grounds to challenge the validity of the warrant authorizing seizure of his blood; the issue that he raises is strictly one of statutory construction. Specifically, Pena's argument is predicated on the assertion that seizure and testing of blood after a refusal to submit to a breathalyzer test is prohibited by the Alaska Implied Consent Statute, AS 28.35.031–.034. The two crucial provisions of this statute for purposes of Pena's claim are contained in AS 28.35.031 and AS 28.35.032(a). At the time of Pena's offense, these provisions stated:

AS 28.35.031. *Implied Consent.* A person who operates or drives a motor vehicle in this state shall be considered to have given consent to a chemical test or tests of his breath for the purpose of determining the alcoholic content of his blood or breath *if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle while intoxicated.* The test or tests shall be administered at the direction of a law enforcement officer who has reasonable grounds to believe that the person was operating or driving a motor vehicle in this state while intoxicated. [Emphasis added.]

AS 28.35.032. *Refusal to Submit to Chemical Test.* (a) If a person under arrest refuses the request of a law enforcement officer *to submit to a chemical test of his breath* as provided in AS 28.35.031, after being advised by the officer that his refusal will result in the suspension, denial or revocation of his license and that the refusal may be used against him in a civil or criminal action or proceeding arising out of an act alleged to have been committed by him while operating or driving a vehicle under the influence of intoxicating liquor, *a chemical test shall not be given.* [Emphasis added.]

In asserting his claim on appeal, Pena relies on the interpretation given to these provisions by the Alaska Supreme Court in *Anchorage v. Geber,* 592 P.2d 1187 (Alaska

1979).[1] *Geber* involved four separate cases in which motorists had been subjected to warrantless, non-consensual blood alcohol tests after being arrested for driving while intoxicated (DWI). The defendants relied upon AS 28.35.032(a), contending that the breathalyzer test was the only proper means by which police could have obtained evidence of blood alcohol content.

The supreme court characterized the issue presented in *Geber* as follows:

> [T]he question in the cases at bar is whether the language of AS 28.35.032(a), providing that, upon a person's refusal to submit to a chemical test of his breath, "*a chemical test shall not be given*," means that law enforcement officials are precluded from performing other chemical tests in order to determine whether alcohol is present in the person's blood.

*Id.* at 1190 (emphasis in original). After a review of the legislative history of the Alaska Implied Consent Statute, the court concluded:

> The express language of AS 28.35.032(a), coupled with the legislative history described above, leads us to the conclusion that in enacting the Implied Consent Statute the legislature intended that once a breath test had been refused no other chemical test would be allowed.

*Id.* at 1191. In reaching this conclusion, the court expressly rejected the argument that a blood test was not a "chemical test" within the meaning of AS 28.35.032(a):

> We interpret the language of AS 28.35.-032(a), stating that after refusal to submit to a test of the breath "a chemical test shall not be given," to mean *any*

chemical test, be it of the breath, blood, urine or otherwise. Thus, we reject the state and municipality's argument that such language means only that no other chemical test of the breath shall be given.

*Id.* at 1191 (emphasis in original).

The state argues vigorously that *Geber's* interpretation of AS 28.35.032(a) should be applied only to prosecutions for DWI and that the *Geber* holding should not be extended to felony charges arising out of incidents involving drunk driving. We fail to perceive any basis for the narrow reading of AS 28.35.032(a) proposed by the state.

It is manifest that the provisions of the Implied Consent Statute are not restricted to DWI prosecutions. Instead, by the express and unequivocal terms of the statute itself, implied consent applies to all cases in which a person is "lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle while intoxicated." AS 28.35.031. The language of AS 28.35.032(a), which expressly prohibits any additional chemical tests to determine blood alcohol levels from being given once a breathalyzer test has been refused, specifically applies in all cases in which "a person under arrest refuses the request of a law enforcement officer to submit to a chemical test of his breath *as provided in AS 28.35.-031 . . . .*" AS 28.35.032(a) (emphasis added). Thus, the plain language of the Implied Consent Statute leaves little room to distinguish between treatment of DWI cases and cases involving more serious crimes predicated upon a person's operation of a vehicle while intoxicated.[2]

---

**1.** The statutory language considered by the court in *Geber* differed slightly from the language applicable to Pena's case. In the interim between the *Geber* decision and the date of commission of Pena's offense, the legislature amended AS 28.35.031 and AS 28.35.032 to provide that a person's refusal to take a breathalyzer test could be admitted in evidence at trial. Neither Pena nor the state has argued that the amendments have any impact upon the issue decided by the court in *Geber*. For the purpose of disposing of the issue raised in this appeal, we consider the version of the Implied Consent Statute applicable to Pena to be substantially identical to that considered in *Geber*.

**2.** The state argues that AS 28.35.032(b) provides a basis for distinguishing between DWI prosecutions and more serious charges arising from a defendant's conduct of driving while intoxicated. AS 28.35.032(b) provides, in relevant part:

> (b) Upon receipt of a sworn report of a law enforcement officer that a person has refused to submit to a chemical test authorized under AS 28.35.031, containing a statement of the circumstances surrounding the arrest and *the grounds upon which his belief was based that*

At least one prior decision of the Alaska Supreme Court also militates against limiting application of AS 28.35.032(a) to DWI prosecutions. In *Layland v. State,* 535 P.2d 1043 (Alaska 1975), the court considered whether results of a warrantless blood test taken from the defendant were admissible in a negligent homicide prosecution. A sample of Layland's blood was drawn without his consent following an automobile accident that involved a fatality; Layland was not under arrest when his blood was taken. In deciding the case, the court expressly considered whether the taking of Layland's blood could be justified by reliance on the Implied Consent Statute. The court noted that the provisions of AS 28.35.-081 authorized only a chemical test of the breath and, furthermore, that they required a lawful arrest prior to testing. Since neither condition was satisfied in the case, the court concluded that Layland could not be deemed to have impliedly consented to have his blood drawn for testing. In so holding, the *Layland* court attributed no importance whatsoever to the fact that the defendant had been charged with the felony offense of negligent homicide instead of with DWI, a misdemeanor. *See id.* at 1046 & n. 13.[3]

the person was operating or driving a motor vehicle in violation of AS 28.35.030 [Alaska's DWI statute], the Department of Public Safety shall notify the person that his license or nonresident privilege to drive or operate a motor vehicle in the state is revoked or suspended .... [Emphasis added.]

The state contends that the fact that this provision refers only to Alaska's DWI statute as a basis for suspending or revoking a license for refusal to submit to a breathalyzer signifies that the legislature intended to limit the effect of the implied consent provisions only to misdemeanor DWI prosecutions. This contention is without merit. When read in context, the limited reference in AS 28.35.032(b) to prosecutions under Alaska's DWI statute merely indicates a recognition of the fact that, regardless of whether the defendant is ultimately charged with DWI or with a more serious offense such as manslaughter, there will always be probable cause to arrest for DWI if the defendant was originally "lawfully arrested for an offense arising out of acts alleged to have been committed while ... operating or driving a motor vehicle while intoxicated."

**3.** The supreme court's decision in *Anchorage v. Geber* is also illuminating. The result reached by the court in *Geber* was inconsistent with

Relevant case law from other jurisdictions also weighs against distinguishing between DWI cases and prosecutions for more serious offenses in applying the admonition of AS 28.35.032(a) that "a chemical test shall not be given" following a breathalyzer refusal. Courts that have distinguished between DWI cases and felonies predicated on the offense of driving while intoxicated have in almost all instances done so on the basis of implied consent statutes that referred only to DWI prosecutions or on the basis of statutes whose legislative history affirmatively indicated an intent to restrict the scope of implied consent to DWI prosecutions. *See, e.g., People v. Sanchez,* 173 Colo. 188, 476 P.2d 980, 982 (Colo.1970); *State v. Singleton,* 174 Conn. 112, 384 A.2d 334, 336 (Conn.1977); *People v. Moselle,* 57 N.Y.2d 97, 454 N.Y.S.2d 292, 296, 439 N.E.2d 1235, 1239, (N.Y.1982); *State v. Heintz,* 34 Or.App. 175, 578 P.2d 447, 448–49 (Or.App.), *modified on other grounds,* 35 Or.App. 155, 580 P.2d 1064 (Or.App.1978), *aff'd,* 286 Or. 239, 594 P.2d 385, 392–93 (Or.1979); *State v. Krieg,* 7 Wash.App. 20, 497 P.2d 621, 624–25 (Wash.App.1972).[4]

Given the foregoing considerations, we conclude that AS 28.35.032(a) cannot be

portions of the court's prior holding in *Layland* that discussed the scope of Alaska's Implied Consent Statute. Although the court could easily have distinguished the *Geber* case from its holding in *Layland* based on the fact that *Layland* involved a felony prosecution for negligent homicide, as to which implied consent would not apply, it chose not to do so; instead, the court expressly overruled the inconsistent language of the *Layland* case, thereby implying that AS 28.35.032(a) applies to felony prosecutions. *Anchorage v. Geber,* 592 P.2d at 1192 n. 8.

**4.** In this regard, the state's position is severely undercut by the legislature's recent enactment of AS 28.35.035, which expressly provides that a nonconsensual test for blood alcohol content may be administered in cases where the defendant is under arrest for driving while intoxicated and the arrest results from an accident causing death or physical injury to another person. Implicit in the enactment of AS 28.35.-035 is the conclusion that, under prior law, no exemption from the provisions of AS 28.35.031 existed for cases potentially involving charges more serious than driving while intoxicated.

restricted to apply solely to DWI prosecutions. To the extent that the statute, by providing that "a chemical test shall not be given" following a breathalyzer refusal, affirmatively limits the manner in which evidence of intoxication may be obtained, its limitation must apply with equal force in all prosecutions "arising out of acts alleged to have been committed while [the defendant] was operating or driving a motor vehicle while intoxicated." AS 28.35.031.

In the present case it is undisputed that Pena's manslaughter charge was predicated on the allegation that he caused the fatal accident on September 2, 1980, by driving his truck while under the influence of intoxicating liquor. Therefore, the Implied Consent Statute applies to Pena's case to the same extent that it would if he had simply been charged with DWI. We must, however, separately consider whether the restrictions of AS 28.35.032(a) against further testing after a breathalyzer refusal apply to situations where a blood sample is obtained by the police not in reliance upon the implied consent of the accused, but pursuant to a lawfully issued search warrant.

The Alaska Supreme Court has never squarely considered this question, since *Layland v. State* and *Anchorage v. Geber* —the court's prior decisions discussing the permissible scope of authority under the Implied Consent Statute to take samples of blood for chemical testing—both involved warrantless seizures of blood. We recognize, however, that a forceful case can be made for the proposition that this question was resolved in *Anchorage v. Geber.* For the holding of the court in that case was couched in broad language, seemingly not restricted to cases involving warrantless seizures of blood:

As we interpret the Implied Consent Statute, it was intended to provide an exclusive method for obtaining direct evidence of a suspect's blood alcohol content, absent his or her express consent to the use of some other form of testing.

592 P.2d at 1192. *See also State v. Hitchens,* 294 N.W.2d 686 (Iowa 1980).[5]

As we have previously noted, no constitutional issue is presented, and the sole question is one of statutory construction. Though the question is extremely close and the countervailing arguments very strong, we are nevertheless inclined to hold that the result in *Geber* is not controlling in the present case. We believe that *Geber* is susceptible of a narrower reading than its broad language would at first glance suggest. *Anchorage v. Geber* involved warrantless seizures of blood; however, the seizures in *Geber* had occurred following lawful arrests for DWI. The primary issue considered in *Geber* was whether a warrantless blood sample taken after a breathalyzer refusal constituted a "chemical test" within the contemplation of AS 28.35.032(a). Despite the sweeping language of its holding, nothing in *Geber* indicates that the court gave consideration to the independent question of whether a lawfully issued warrant could properly be used to justify a seizure of blood for purposes of performing blood alcohol testing.

To the contrary, a close reading of the case leaves the impression that the court's chief concern was with defining the extent to which a warrantless seizure of blood, undertaken after a breathalyzer refusal could be deemed to be justified by reliance on the implied consent of the defendant. In this regard it is evident that *Geber* held the provisions of AS 28.35.032(a) to act as a complete prohibition. It is far from clear, however, that the court in *Geber* intended to go farther by holding that AS 28.35.-

**5.** As Pena correctly argues in his brief, *State v. Hitchens* supports the view that *Geber* should be construed to be dispositive in the present case. In *Hitchens,* the Iowa Supreme Court interpreted an implied consent statute that was essentially identical to AS 28.35.032(a). The case involved a prosecution for manslaughter in which a blood test was obtained pursuant to a search warrant issued after the defendant refused to take a breathalyzer examination. The court concluded that the statutory provision against giving any further chemical test after the breathalyzer refusal precluded the use of a warrant to obtain blood for chemical testing. The court cited *Anchorage v. Geber* as directly supporting its conclusion. *See State v. Hitchens,* 294 N.W.2d at 688.

032(a) acted to prohibit all forms of chemical testing for alcohol other than the breathalyzer, even when—as in the case of lawfully issued search warrants—the authority for conducting such tests is predicated on a source entirely independent of the Implied Consent Statute.

Moreover, *Geber's* treatment of *Layland v. State* seems consistent with a narrow reading of the case. In *Layland,* 535 P.2d at 1046 & n. 13, the supreme court suggested that a warrantless seizure of blood in connection with an offense arising from an act committed while a person was driving under the influence of alcohol might be authorized by the terms of the Alaska Implied Consent Statute as long as the person whose blood was seized had formally been arrested, as required by AS 28.35.031, and as long as the warrantless seizure was carried out in compliance with constitutional requirements.[6]

By overruling the discussion in *Layland* which seemed to intimate that a warrantless seizure of blood might, in certain circumstances, be authorized by the Implied Consent Statute, *Geber* only emphasized its conclusion that implied consent cannot be invoked to justify chemical tests of blood alcohol obtained by any means other than the breathalyzer. There is nothing that compels an inference that the court in *Geber,* by overruling *Layland,* intended to establish a rule affirmatively prohibiting law enforcement officers from seizing samples of blood for chemical testing in cases where their authority to make such seizures arises from a source entirely separate from and independent of the implied consent statute.

■ We believe that the narrow interpretation of *Geber* is the proper one. Construing the holding in the case to constitute a sweeping prohibition against the use of lawfully issued search warrants in all cases where a breathalyzer test has been refused would in essence amount to a ruling that AS 28.35.032(a) works a partial repeal by implication of AS 12.35.020(4), which expressly authorizes the issuance of warrants for the seizure of any property which "constitutes evidence of a particular crime or tends to show that a certain person has committed a particular crime." Yet under well-settled principles of statutory construction, implied repeal is disfavored; one legislative enactment will not be presumed to impliedly repeal another in the absence of clear legislative intent or inconsistency so fundamental as to be fatal. *See Hafling v. Inlandboatmen's Union of Pacific,* 585 P.2d 870 (Alaska 1978).

■ Here, it cannot be said that the implied consent limitation contained in AS 28.35.032(a) is fundamentally inconsistent with the provisions authorizing issuance of search warrants for evidence of crime that are contained in AS 12.35.020. Both statutory provisions can be given full effect by reading AS 28.35.032(a) to restrict the use of chemical tests other than a breathalyzer only in situations where the implied consent statute is relied on as the exclusive source of authority for subjecting a person to alcohol testing. In short, we do not think it can be said that by enacting the Implied Consent Statute the legislature has clearly manifested an intent to abrogate the traditional and long-accepted procedure of obtaining evidence by reliance on search warrants duly issued by a judge or magistrate.

Furthermore, it would seem to serve little purpose to preclude seizure and testing of blood samples pursuant to a search warrant. As the state correctly observes in its brief, the policy of avoiding physical confrontations, which underlies the Implied Consent Statute's limitation on testing, carries little force when a lawfully issued search warrant is obtained. By the time a warrant has been secured the process of arrest will normally have been completed, and the potential for physical confrontation typically associated with an arrest situation will no longer exist. More significantly, an arrestee who is faced with a warrant for seizure of his blood is confronted not so much by the physical threat of an individual officer—whose actions he may well perceive as both biased and arbitrary—as by the legal

---

**6.** *See Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

compulsion of a formal order issued by the court. Realistically, there seems to be little reason to fear the consequences of confrontation in such circumstances to a greater extent than they are feared in any other case requiring execution of a warrant for the search of a person.

We are unpersuaded by the reasoning of cases such as *State v. Hitchens* on this point. In *Hitchens,* the court reasoned that administrative revocation of a driver's license following a breathalyzer refusal served as a "trade-off" for the potential loss of evidence to the state resulting from the refusal. This *quid pro quo* was seen as justifying an absolute restriction against any form of testing other than the breathalyzer. Thus, in the view of the court, a person who is willing to suffer revocation of his license was given "the right to refuse a breathalyzer." We think this reasoning is strained. The prohibition against additional testing embodied in AS 28.35.032(a) is a recognition that it is unrealistic to extend the concept of implied consent to situations in which the forceful taking of blood or breath would be required. It hardly seems accurate, however, to assert that the legislature viewed an administrative license revocation as the equivalent of a potential DWI conviction. It seems even more apparent that a license revocation was not viewed as a fair "trade-off" for a potential manslaughter conviction.

It is significant that the Alaska Supreme Court, contrary to the position of the court in *State v. Hitchens,* has expressly rejected the notion that AS 28.35.032(a) creates a "right to refuse a breathalyzer test." *See Palmer v. State,* 604 P.2d 1106, 1110 (Alaska 1979). *See also Coleman v. State,* 658 P.2d 1364, 1365 (Alaska App.1983).

Quite recently, the Alaska Supreme Court has given a relatively circumspect reading to *Geber*'s holding that no right to refuse the breathalyzer test existed. In *Copelin v. State,* 659 P.2d 1206, 1212–1213 (Alaska 1983), the supreme court recognized the existence of a "right to refuse" in the sense that an arrested person has the power to refuse. The court in *Copelin* reasoned that, since a person has the power to refuse, and since, under AS 28.35.031, further testing is prohibited after a breathalyzer refusal, the Implied Consent Statute in effect allows defendants a choice between taking the breathalyzer test or refusing it and suffering the consequences. *Id.* at 1213 & n. 17. The existence of this choice, according to the court, justified allowing a person arrested for DWI to contact an attorney before taking the breathalyzer test.

However, we do not regard the court's holding in *Copelin* as weighing against the position that we adopt in the present case. In *Copelin,* the court did not overrule its earlier statement in *Geber* that there is no right to refuse a breathalyzer test. To the contrary, the court expressly acknowledged that, as a constitutional and statutory matter, no "right" existed. Similarly, while indicating that the structure of the Implied Consent Statute allows defendants a choice as to taking the test, the court never indicated that administrative sanctions for a breathalyzer refusal were intended as a "trade-off" for the test. Nor did the court indicate any view concerning the permissibility of obtaining a blood test pursuant to a duly issued search warrant—a means entirely independent of the Implied Consent Statute.

A broad reading of *Geber* could, moreover, lead to anomalous results. Armed with the knowledge that a breathalyzer refusal would deprive them of potentially crucial evidence, law enforcement officers investigating crimes arising from the operation of a motor vehicle under the influence of intoxicating liquor, especially in the most serious situations, could be expected to avoid the chance of a breathalyzer refusal by postponing any arrest until a warrant authorizing seizure and testing of blood is obtained and served. Thus, extending the holding in *Geber* to preclude the use of search warrants as a means of obtaining blood would only encourage officers to alter their handling of investigations by circumventing the restrictions of the implied consent provision.

In conclusion, while it is evident that the Implied Consent Statute, as it read

at the time of Pena's offense, prohibited any warrantless blood alcohol testing following a breathalyzer refusal, we find little to indicate that the legislature intended the statute to act as an affirmative prohibition against the independent means of using a search warrant to obtain a sample of blood from a person who has refused to submit to a breathalyzer test after being arrested for an offense arising from an act committed by him while driving under the influence of intoxicating liquor; we also find little prac-

tical or logical justification for such a prohibition. Accordingly, we decline to extend the holding of *Anchorage v. Geber* to cases in which police have obtained samples of blood for alcohol testing pursuant to lawfully issued warrants. We conclude that the seizure of Pena's blood in the present case must be upheld.

 Pena has raised one additional issue that merits discussion.[7] Upon conviction, Pena was sentenced by Judge Seaborn Buckalew to serve three years' imprison-

---

**7.** Pena has also raised an array of issues that do not require full discussion. These issues, and our disposition of them, are as follows:

(a) Pena complains that six instructions given to the jury by the trial judge were improper. Our holding that Pena's blood test was admissible resolves his claim as to three of these instructions. The remaining three instructions set out and defined the elements of the lesser-included offense of negligent homicide. Because Pena's jury convicted him of manslaughter, the greater offense, any error as to the lesser-included offense instructions would at most be harmless. *Christie v. State,* 580 P.2d 310, 320 (Alaska 1978).

(b) Pena asserts that the trial court improperly refused to suppress certain statements that he made to police following his arrest. Though the issue is noted in Pena's opening brief, it is not discussed. Pena asserts that the issue was adequately briefed in a prior petition for review to this court, which he incorporated by reference in his brief. Examination of the referenced petition reveals that the suppression issue was not in fact raised therein. We hold that the issue has been abandoned by Pena's failure to brief it. *Condon v. State,* 498 P.2d 276, 281 n. 3 (Alaska 1972).

(c) Pena alleges error in the trial court's denial of his motion to dismiss the indictment against him. The issue has not been briefed, and we therefore deem it abandoned. *Condon v. State, id.*

(d) Pena contends that the trial judge erred in refusing to grant a motion for mistrial made after the jury indicated that it was deadlocked. The judge denied the motion, and after inquiring of the jury, submitted a supplemental instruction defining recklessness. Pena also asserts that the court committed error in giving this supplemental instruction; he contends that the instruction was equivalent to an *Allen* charge and that it was especially objectionable because the jury had violated the court's instructions by indicating the number of jurors voting for acquittal and conviction. Having reviewed the record, we find no abuse of discretion by the trial judge in failing to grant the requested

mistrial or in submitting a supplemental instruction on recklessness to the jury. *See Des Jardins v. State,* 551 P.2d 181, 189 (Alaska 1976); *Koehler v. State,* 519 P.2d 442, 449 (Alaska 1974).

(e) Pena challenges admission of a group of more than 60 photographs taken at the accident scene and used in evidence at trial. He objects to the group generically, without specifying separate grounds applicable to particular photographs. Pena's objection is based upon the contention that the photographs were cumulative, potentially distracting and prejudicial, and basically irrelevant to any contested issue at trial. Upon examination, the bulk of the photographs appear to be mundane, although some of the photographs depict the deceased immediately following the accident. The challenged photographs were extensively relied upon by witnesses to illustrate their testimony concerning the manner in which the collision occurred, the condition of the vehicles involved in the collision, and the conditions prevailing at the scene of the accident. The photographs were offered into evidence to assist the jury in attempting to form their own judgment as to the manner in which the collision occurred. We hold that the trial court did not abuse its discretion in admitting the photographs into evidence. *Valentine v. State,* 617 P.2d 751, 754 (Alaska 1980); *Watson v. State,* 387 P.2d 289, 294 (Alaska 1963).

(f) Pena urges that the trial judge erred in excluding testimony of a defense witness offered to establish Pena's good character. Pena has not briefed this issue, and we deem it abandoned. *Condon v. State,* 498 P.2d at 281 n. 3.

(g) Pena asserts that the trial judge erred in refusing to award costs and attorney's fees to him as a result of the prosecution's filing of a superseding indictment in his case. We find this issue to be frivolous.

(h) Pena maintains that the trial judge erred in refusing to grant a mistrial or continuance when the prosecution presented, for the first time at trial, documentary evidence concerning a traffic signal located at the scene of the

ment, with all but nine months of the sentence suspended. As a special condition of his suspended sentence, Pena was required to pay $4,100 in restitution to Chris Sciscente, the driver of the automobile with which he had collided. On appeal, Pena contends that the restitution order is illegal.

 AS 12.55.100(a)(2) controls awards of restitution when imposed as a condition of suspended sentences or probation. This statute provides, in relevant part:

> [T]he defendant may be required ... to make restitution or reparation to aggrieved parties for actual damages or loss caused by the crime for which the conviction was had ....

Pena insists that Sciscente cannot properly be deemed one of the "aggrieved parties" to "the crime for which the conviction was had." We disagree.

Under AS 12.55.100(a)(2), consideration of the precise crime for which Pena was convicted is of paramount importance in determining whether Sciscente was an aggrieved party. Pena's conviction was for the crime of manslaughter. This offense was alleged to have resulted from a collision caused by Pena's recklessness in operating his pickup truck while under the influence of intoxicating liquor. Sciscente was injured and his passenger killed in the collision. Under the circumstances, property damages and injuries directly sustained by Sciscente were unquestionably the consequence of precisely the same conduct and intent on Pena's part as the conduct and intent that caused the collision. We conclude that this issue was not properly preserved at trial, since Pena's counsel was given the opportunity to talk to and consult with the witness who produced the documentary evidence. In fact, Pena's counsel was given access to the documents and to the state's witness over the course of the afternoon and evening immediately after the documentary evidence came to light. The following morning, at trial, Pena's counsel failed to renew his motion for mistrial or to request any further continuance. We find, additionally, that this issue has not adequately been briefed on appeal, and we conclude that the record before us fails to establish any prejudice to Pena resulting from the untimely production of the challenged documents.

death with which Pena was charged and which led to Pena's conviction. Since it was uncontested that Sciscente was the driver of the car with which Pena collided, Pena's conviction of the manslaughter of Sciscente's passenger necessarily encompasses, both as a matter of fact and of law,[8] the injuries directly caused to Sciscente and to his property.

Sciscente was therefore an aggrieved party under AS 12.55.100(a)(2), since it is manifest that the injuries and damage he suffered were directly caused by the crime for which Pena was convicted. We hold that the restitution order imposed by Judge Buckalew was authorized under AS 12.55.-100(a)(2).

The conviction and sentence are AFFIRMED.

(i) Pena claims that his trial was "fraught with constitutional error" and that the cumulative impact of the error required reversal of his conviction. He relies for this contention either on the individual claims of error that he has separately raised and that we have rejected or on claims of error that he has not briefed. We find no merit to this claim.

8. *Cf. DeSacia v. State*, 469 P.2d 369 (Alaska 1970) (jury verdicts finding the defendant guilty of one count and not guilty of another held fatally inconsistent where defendant was charged with two counts of manslaughter in connection with an automobile accident in which both the driver and the passenger of the automobile that defendant collided with were killed).