James LUNDQUIST and Alice Lundquist, individually and as personal representatives of the Estate of Dana J. Lundquist, Appellants,

v.

DEPARTMENT OF PUBLIC SAFETY, State of Alaska, Appellee.

No. 7075.

Supreme Court of Alaska.

Dec. 9, 1983.

Charles E. Cole and Stephan H. Williams, Law Offices of Charles E. Cole, Fairbanks, for appellants.

William G. Mellow, Asst. Atty. Gen., Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., MATTHEWS and COMPTON, JJ., and BUCKALEW, Judge.*

## OPINION

COMPTON, Justice.

Under AS 28.35.032, the Department of Public Safety (the "Department") must suspend or revoke the driver's license of a person who is believed to be operating a motor vehicle while intoxicated and who refuses to submit to a chemical analysis of his breath.[1] The issue in this appeal is whether AS 28.35.032 creates a duty by the Department toward the public which, if breached, can form the basis of a cause of

action for negligence against the Department. The superior court granted summary judgment in favor of the Department and dismissed the Lundquists' claim against it. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 3, 1979, a Fairbanks City Police Officer arrested Joseph Koch for driving while intoxicated. Koch refused to submit to a breath-analysis test, in violation of Alaska's implied consent law, AS 28.35.031.[2] The report of Koch's refusal was received by the Department on July 13, 1979. Pursuant to AS 28.35.032, the Department sent a letter to Koch notifying him that his license was revoked for a period of ninety days beginning August 2, 1979. On July 29, after he had been drinking, Koch drove his car into a motorcycle driven by Dana Lundquist. Lundquist died as a result of the injuries he sustained in the collision. This accident occurred four days before the license revocation took effect and one day before Koch received the notice of revocation.

---

* Buckalew, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

1. Former AS 28.35.032 provided in part:
   (a) If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test of his breath as provided in § 31 of this chapter, after being advised by the officer that his refusal will result in the suspension, denial or revocation of his license, a chemical test shall not be given.
   (b) Upon receipt of a sworn report of a law enforcement officer that a person has refused to submit to a chemical test authorized under § 31 of this chapter, containing a statement of the circumstances surrounding the arrest and the grounds upon which his belief was based that the person was operating a motor vehicle in violation of § 30 of this chapter, the Department of Public Safety shall notify the person that his license or nonresident privilege to drive a motor vehicle in the state is revoked or suspended, or that no original license or permit will be issued for three months. In the same notice the department shall inform the person that he may initiate a proceeding in the district court to rescind the department's action.

Former AS 28.35.032 was in effect at the time this case arose. It was amended by ch. 129, § 12, SLA 1980, and ch. 117, § 17, SLA 1982. These amendments did not affect the substance of AS 28.35.032(a)–(b).

2. Former AS 28.35.031, in effect at the time of refusal, provided:
   A person who operates or drives a motor vehicle in this state shall be considered to have given consent to a chemical test or tests of his breath for the purpose of determining the alcoholic content of his blood if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer who has reasonable grounds to believe that the person was operating or driving a motor vehicle in this state while under the influence of intoxicating liquor.
   AS 28.35.031 was amended by ch. 129, § 11, SLA 1980 and ch. 117, § 16, SLA 1982. The substantive effect of these amendments is irrelevant to this case.

On July 28, 1981, Lundquist's parents filed a wrongful death action against Koch and the Department. The Lundquists alleged that the Department had a duty under AS 28.35.032 to suspend Koch's license; that the Department negligently failed to suspend Koch's license in a timely manner; that the Department should have foreseen that this failure would create a danger to the public by permitting Koch to continue driving; and that this failure proximately caused the death of Dana Lundquist.

In its answer, the Department admitted that, pursuant to AS 28.35.032, it was under a duty to suspend Koch's driver's license for his refusal to submit to a breath-analysis test. As an affirmative defense, however, it asserted that the complaint failed to state a cause of action against the Department because "AS 28.35.032(b) does not establish an actionable duty owing to Plaintiff's decedent." On the basis of this defense, the Department filed a motion for summary judgment. Following oral argument, the superior court granted the motion and dismissed the Lundquists' claim against the Department. This appeal followed.

## II. DISCUSSION

The issue before us is narrow. The Department moved for summary judgment on the sole ground that AS 28.35.032 does not establish an actionable duty because it is not a purpose of the statute to protect the public from potential harm by removing drunk drivers from the road. The Department did not reach the issue of breach, actual causation, or proximate cause.[3]

Negligence is the breach of a legal duty "to conform to the legal standard of reasonable conduct in the light of the apparent risk." W. Prosser, The Law of Torts § 53, at 324 (4th ed. 1971). Under certain circumstances, courts may derive a standard of conduct from a statute, even though the statute does not expressly establish a standard of conduct:

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
>
> (a) to protect a class of persons which includes the one whose interest is invaded, and
>
> (b) to protect the particular interest which is invaded, and
>
> (c) to protect that interest against the kind of harm which has resulted, and
>
> (d) to protect that interest against the particular hazard from which the harm results.

Restatement (Second) of Torts § 286 (1965) (adopted by this court in *Ferrell v. Baxter*, 484 P.2d 250, 263 (Alaska 1971)). It is clear that protecting persons from physical harm or death resulting from collisions caused by drunk drivers would be the object of a law that was intended to protect the class of "victims of drunk drivers." The issue is whether AS 28.35.032 was intended to create a duty owed by the Department to persons such as Dana Lundquist; *i.e.,* whether one purpose of the statute is to protect the public from drunk drivers.

Both the Lundquists and the Department agree that the primary purpose of AS 28.-35.032 is to facilitate obtaining reliable evidence of intoxication.[4] They also agree that AS 28.35.032 has at least the indirect effect of furthering public safety by keeping drunk drivers off the road. The Supreme Court of the United States identified

---

**3.** We note, however, that because the Department revoked Koch's license, the Lundquists could not establish a breach, *i.e.,* an unexcused violation of AS 28.35.032, unless the statute were interpreted as requiring revocation sooner than the sixteen-day interval between the Department's receipt of the notice of refusal and the accident that killed Dana Lundquist. The statute does not state how quickly the license must be revoked. Immediate revocation would violate Koch's constitutional rights. *Graham v.*

*State,* 633 P.2d 211, 216 (Alaska 1981) (due process requires opportunity for pre-suspension hearing).

**4.** The court of appeals observed in *Simpson v. Municipality of Anchorage,* 635 P.2d 1197, 1205 (Alaska App.1981), that "the implied consent law ... [was] enacted to facilitate the process of determining whether a driver was actually impaired by the alcohol he had consumed."

three ways in which this indirect effect is accomplished:

First, the very existence of the summary sanction of the statute serves as a deterrent to drunk driving. Second, it provides strong inducement to take the breath-analysis test and thus effectuates the [state's] interest in obtaining reliable and relevant evidence for use in subsequent criminal proceedings. Third, in promptly removing [drivers who refuse to take a breath test upon arrest] from the road, the summary sanction of the statute contributes to the safety of public highways.

*Mackey v. Montrym,* 443 U.S. 1, 18, 99 S.Ct. 2612, 2621, 61 L.Ed.2d 321, 334 (1979). The point of disagreement between the Lundquists and the Department is whether this last effect was, at least in part, an intended purpose of AS 28.35.032.

The purposes of AS 28.35.032 are not stated in the statute, nor is there any legislative history to indicate what the Alaska Legislature intended when it enacted the statute. The Lundquists contend that if the sole purpose of AS 28.35.032 and similar laws were to facilitate the collection of reliable evidence, then other sanctions, such as penal fines or imprisonment, would serve that end just as effectively. *See, e.g.,* AS 28.35.032(f) (added by ch. 117, § 17, SLA 1982) (refusal to submit to test is Class A misdemeanor with attendant sanctions). Virtually every implied consent statute in this country, however, uses license revocation, either exclusively or in part, as the sanction for refusing to take a breath test. The Lundquists conclude that the pervasive use of the revocation sanction is a clear indication that one of its intended purposes is to protect the public from drunk drivers by removing them from the road.

The Department analyzes the purpose of the revocation sanction by placing it in historical context. In *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183, 190 (1952), which was decided the year before New York enacted one of the earliest implied consent statutes, ch. 854, N.Y. Laws 1953, the Supreme Court held that evidence extracted from an accused's stomach against his will violated good taste, as well as his substantive due process rights. Thus, at the time implied consent statutes were first enacted, legislatures were uncertain of the extent to which forcible searches for evidence "inside" a person's body were permissible. The theoretical basis for the statutes was that, in return for the privilege of using the state's highways, a motorist impliedly consented to submit to the breath-analysis test when properly requested to do so. Refusal to submit to the test was deemed tantamount to a withdrawal of the consent upon which the privilege to drive had been conditioned, justifying state revocation of the driver's license. In *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Supreme Court upheld the constitutionality of forcibly taking a blood sample to determine the driver's blood-alcohol level. It is thus not necessary to "compel" voluntary submission to a breath-analysis test by using the license revocation sanction. One commentary states that "[t]he most likely explanation for the widespread adoption of implied consent by the states despite the *Schmerber* decision is that the implied consent language was familiar and had been approved by the courts." Note, *Driving While Intoxicated and the Right To Counsel: The Case Against Implied Consent,* 58 Texas L.Rev. 935, 944 (1980). We find this explanation persuasive; thus, we do not believe that use of the license revocation sanction establishes that a legislative purpose behind AS 28.35.032 was to further public safety by removing drunk drivers from the road.

The Lundquists rely on cases from other jurisdictions that have found this public safety purpose in the implied consent statute. In *Nowell v. State,* 83 Wash. 121, 516 P.2d 205 (1973), the Washington Supreme Court held that one purpose of the implied consent statute was "to remove the driving privileges from those individuals disposed to driving while inebriated." 516 P.2d at 206. *See also Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685, 689 (1971) ("The purpose of the Implied Consent Law is to remove from the highways of this state

drivers who are a menace to themselves and to others because they operate a motor vehicle while under the influence of intoxicating liquor.").

The Department points out that these cases do not decide whether implied consent statutes should be adopted as a legal standard of conduct for the state to abide by. Instead, the purpose of swiftly removing drunk drivers is usually advanced in defense of automatic license suspension provisions that have been challenged on due process grounds. In these decisions, courts have stated that a pre-hearing revocation is permissible because of the need to swiftly remove drunk drivers, which is considered an "emergency situation" requiring summary action.[5] We believe that the reliance by other courts on the emergency doctrine as a justification for curtailing due process rights is not persuasive in the context of determining legislative intent to establish an applicable standard of conduct for the state in negligence cases.

Furthermore, a logical inconsistency arises if "public safety" is viewed as one of the purposes of the license revocation provision. If the legislature had intended the implied consent law to result in the rapid removal of drunk drivers from the road, it should also have provided for summary revocation of the licenses of those who took and failed the breath-analysis test. As the court in *Chavez v. Campbell*, 397 F.Supp. 1285 (D.Ariz.1973), stated:

It cannot be denied that there is a compelling State interest to protect the public from drunk drivers. However, the effect of the implied consent law is not to remove drunks from the road, but rather to remove only those who have refused to submit to the test. Thus, a drunk who takes the breath test continues to drive and keeps his license, while a driver who may be completely sober, and who refuses

to take the test, finds himself excluded from the highways. As a result, the statute does not further any compelling State interest to remove drunks from the road.

397 F.Supp. at 1288. The dissenting opinion in *Mackey v. Montrym* also noted this inconsistency. Rejecting the majority's conclusion that summary procedures are required to further the state's interest in protecting public safety, the dissent stated as follows:

The breath-analysis test is plainly not designed to remove an irresponsible driver from the road as swiftly as possible. For if a motorist submits to the test and fails it, he keeps his driver's license—a result wholly at odds with any notion that summary suspension upon refusal to take the test serves an emergency protective purpose. A suspension for refusal to take the test is obviously premised not on intoxication, but on noncooperation with the police.

443 U.S. 1 at 26, 99 S.Ct. at 2625, 61 L.Ed.2d at 339.

Another problem with the "public safety" purpose is that it presumes that people who refuse to take a breath test are intoxicated and incapable of driving safely. For example, the court in *Campbell v. Superior Court* concluded that suspension was a reasonable sanction for refusal to submit to the test "because a person who refuses the test is very likely to be a dangerous driver." 479 P.2d at 691 n. 3 (*citing City of Westerville v. Cunningham*, 15 Ohio St.2d 121, 239 N.E.2d 40, 41 (1968) (if a defendant accused of intoxication is not intoxicated, the breathalyzer will provide evidence for him; if he is, it will provide evidence against him, thus, "it is reasonable to infer that a refusal to take such a test indicates the defendant's fear of the result of the test")). Although it is true that some drivers who refuse to take the breath-analysis test may be intoxi-

---

**5.** In *Graham v. State*, 633 P.2d at 216, we rejected the "emergency doctrine" as a justification for summary license revocation and held that the due process clause of the Alaska Constitution requires the state to afford citizens the opportunity for a "meaningful hearing" before suspending his or her driver's license under AS

28.35.036(b). This holding was reached in spite of *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), which held that a pre-hearing revocation does not violate the due process clause of the United States Constitution.

cated, the Department observes that "a percentage of [those who refuse the test] surely include[s] the confused, the untrusting, and some Libertarians." As the court in *Chavez* concluded, "there is no data to demonstrate satisfactorily to this Court that an individual is a dangerous driver and a threat on the highways merely because he refuses to take a breath test." 397 F.Supp. at 1288.

It is clear that the statute directs the Department to suspend or revoke the licenses of those who refuse to submit to a breath-analysis, and in this sense, the statute creates a ministerial non-discretionary duty for the state. We believe, however, that this statute is merely an internal operating procedure that provides a sanction for those persons who refuse to submit to the test. This sanction is nothing more than a non-violent means of compelling submission to a test that provides evidence of intoxication. Although the statute may have the effect of keeping the roads safe from drunk drivers by suspending the licenses of those who refuse the test, this was not an intended purpose of the statute. Thus, the Department's duty to revoke Koch's license was not a duty owed to Dana Lundquist.

Our decision is based in part on policy considerations. If all statutory duties of governmental officials were held to create a duty to anyone allegedly harmed by the violation of that enactment, the financial resources of the government would seriously be diminished, and the legislature would be disinclined to enact operating procedures for fear of the exposure to liability they might create. Prosser explains the policy of judicial restraint as follows:

> It is not every provision of a criminal statute or ordinance which will be adopted by the court in a civil action for negligence, as the standard of conduct of a reasonable man. Otherwise stated, there are statutes which are considered to create no duty of conduct toward the plaintiff, and to afford no basis for the creation of such a duty by the court. The courts have been careful not to exceed the purpose which they attribute to the legislature.... [T]here is ... a special reason, in the theory of the separation of powers, for such reluctance to go beyond the legislative policy.

Prosser, *supra*, at 192 (footnote omitted).

We decline to hold that AS 28.35.032 creates a duty by the Department toward the public which, if breached, can form the basis of a civil action for negligence. Accordingly, the judgment of the superior court is AFFIRMED.

RABINOWITZ, J., not participating.