Manuel R. PENA, Jr., Appellant/Petitioner,

v.

STATE of Alaska, Appellee/Respondent.

Richard RYCHART, Appellant/Petitioner,

v.

STATE of Alaska, Appellee/Respondent.

Nos. 6174, 7052.

Supreme Court of Alaska.

July 20, 1984.

---

George E. Weiss, George E. Weiss & Associates, Anchorage, for appellant/petitioner, Manuel R. Pena, Jr.

Fleur Roberts, Cowper & Madson, Fairbanks, for appellant/petitioner, Richard Rychart.

David Mannheimer, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee/respondent.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

On September 2, 1980, an automobile driven by Manuel R. Pena, Jr. collided with an automobile driven by Chris Scisente resulting in the death of Billy S. Downey, a passenger in Scisente's vehicle. Anchorage police officers investigating the accident, suspecting that Pena had been drinking arrested Pena; took him to the police station, and requested that he take a breathalyzer test. Pena refused to take the test and the police obtained a search warrant authorizing the taking of a sample of Pena's blood. Pena was then taken to the Alaska Hospital where the blood was

drawn. The sample revealed the presence of .21% alcohol in Pena's blood.

The facts behind Rychart's appeal are similar to Pena's. On August 15, 1981, a vehicle driven by Rychart was involved in an accident with another vehicle. Benjamin Coffin, a passenger in Rychart's automobile, died as a result of the collision. On the way to the hospital, police asked Rychart if he would submit to a breath or blood test to determine his blood alcohol content, and he refused. Police later placed Rychart under arrest and pursuant to a search warrant directed emergency room technicians to draw a sample of Rychart's blood. This sample showed that Rychart's blood contained .17% alcohol.

Both Pena and Rychart were charged with manslaughter. Results of the chemical sobriety tests were admitted into evidence at each trial over defense objections. Pena and Rychart were convicted and both appealed their convictions. In *Pena v. State*, 664 P.2d 169 (Alaska App., 1983), the court of appeals upheld Pena's conviction, ruling that the test results were properly admitted into evidence. On May 11, 1983 the court of appeals issued a summary disposition denying Rychart's appeal in light of the *Pena* decision.

Pena and Rychart appeal their convictions arguing that, in light of Alaska's Implied Consent Statutes, results of the nonconsensual chemical sobriety tests were improperly admitted into evidence. In 1969 the Alaska Legislature passed the Alaska Implied Consent Statute, which at the time of Pena's and Rychart's arrests provided in part:

> AS 28.35.031 *IMPLIED CONSENT.* A person who operates or drives a motor vehicle in this state shall be considered to have given consent to a chemical test or tests of his breath for the purpose of

determining the alcoholic content of his blood if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer who has reasonable grounds to believe that the person was operating or driving a motor vehicle in this state while under the influence of intoxicating liquor.

> AS 28.35.032 REFUSAL TO SUBMIT TO CHEMICAL TEST. (a) If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test of his breath ... after being advised by the officer that his refusal will result in the suspension, denial or revocation of his license, a chemical test shall not be given.

We agree with appellants that the Implied Consent Statutes that were in effect at the time of their arrests preclude the admission into evidence of chemical sobriety test results obtained pursuant to a search warrant after the arrestee has refused to take such a test.

Alaska's Implied Consent Statutes provide that a driver impliedly consents to being subjected to chemical sobriety tests and creates penalties for a driver's refusal to submit to this testing.[1] The penalty for refusing the test, at the time of the arrests in this case, was a three-month suspension of the suspect's driver's license.[2]

The Implied Consent Statute states that, if the driver refuses to submit to a chemical sobriety test, "a chemical test shall not be given." AS 28.35.032. In *Anchorage v. Geber*, 592 P.2d 1187 (Alaska 1979), we interpreted this language to prohibit the

---

1. The California Supreme Court, speaking of California's Implied Consent Statute, noted that "[t]he effect of this legislation is to equip peace officers with an instrument of enforcement not involving physical compulsion." *People v. Superior Court*, 493 P.2d 1145, 1150, 100 Cal.Rptr. 281, 493 P.2d 1145 (Cal.1972). *See also, State v. Bellino*, 390 A.2d 1014 (Me.1978).

2. The 1982 and 1983 amendments to AS 28.35.-032 make the refusal to submit to testing a misdemeanor and provide that this refusal can be used against the driver as evidence in any criminal or civil proceeding arising out of acts the driver allegedly committed while operating a motor vehicle.

administration of any chemical test, including a test of the blood or urine, once a suspect has refused a breath test. In *Geber*, police officers arrested appellants for driving while intoxicated. Samples of the appellants' blood were taken over their objections and the results were used to convict the appellants at their individual trials. We held that the language in AS 28.35.032 precluded the admission of the test results into evidence. 592 P.2d at 1191. We further noted that the Implied Consent Statute "was intended to provide an exclusive method for obtaining direct evidence of a suspect's blood alcohol content, absent his or her express consent to the use of some other form of testing." 592 P.2d at 1192.[3]

In the case at bar, the court of appeals held that *Geber* does not control the instant cases because *Geber* only addresses the question of the admissibility of non-consensual test results obtained as a search incident to arrest. *Pena v. State*, 664 P.2d 169, 174 (Alaska App., 1983). The court ruled that non-consensual test results obtained pursuant to a search warrant are distinguishable and that the Implied Consent Statute does not preclude their admission into evidence. The court of appeals reasoned that to suppress the blood test results would inhibit the goals behind the Implied Consent Statute of reducing the incidence of drunk driving.

■■■ We find no reason to draw the distinction drawn by the court of appeals.

The Implied Consent Statute provides the exclusive authority for the administration of police-initiated[4] chemical sobriety tests to a driver arrested for acts allegedly committed while operating a motor vehicle. The statute clearly provides that after a driver refuses to submit to a chemical sobriety test the driver shall be penalized by the sanctions established in AS 28.35.032 but that no test shall be given. This applies equally to preclude chemical sobriety tests performed pursuant to search warrants as it does to tests performed as searches incident to arrest.

■■■ In 1982 and 1983, after the arrests of Pena and Rychart, the legislature enacted and amended the Implied Consent Statute by passing AS 28.35.035, which provides:

ADMINISTRATION OF CHEMICAL TESTS WITHOUT CONSENT. (a) If a person is under arrest for an offense arising out of the acts alleged to have been committed while the person was driving a motor vehicle while intoxicated, and that arrest results from an accident that causes death or physical injury to another person, a chemical test may be administered without the consent of the person arrested to determine the amount of alcohol in that person's breath or blood.[5]

Thus, the legislature has eliminated the driver's ability to refuse a chemical sobriety test[6] in situations, such as in the case at

**3.** In *Layland v. State*, 535 P.2d 1043 (Alaska 1975), we accepted the parties' concession that the Implied Consent Statute does not preclude admitting into evidence results of chemical sobriety tests if the taking of the samples did not violate the accused's constitutional rights. 535 P.2d at 1046 n. 13. The issue in *Layland* was whether the admission of results of a non-consensual, warrantless, blood test not performed as a search incident to arrest violated the accused's rights under the federal and state constitutions; the limiting effect of the Implied Consent Statute was not argued. In *Geber*, we noted that the parties' concession in *Layland* was ill-advised and we overruled *Layland* to the extent that it was inconsistent with *Geber*. 592 P.2d at 1191, 1192 n. 8.

**4.** Results of chemical sobriety tests performed by medical personnel for medical purposes are

admissible against a defendant even after the defendant has refused officers' requests to consent to a chemical sobriety test. *Nelson v. State*, 650 P.2d 426 (Alaska App.1982). However, the court in *Nelson* recognized that, once a suspect refuses police requests to consent to a chemical sobriety test, police may not direct medical personnel to administer such a test. 650 P.2d at 427.

**5.** Because Pena's accident took place in 1980 and Rychart's in 1981, this amended statute does not apply to their case.

**6.** The court of appeals supported its conclusion by noting that this court has stated that the Implied Consent Statute does not create a "right" of a driver to refuse to submit to chemical testing. 664 P.2d at 176, *citing Copelin v.*

bar, when the arrestee is involved in an accident that results in the death of or injury to another person.

Conviction REVERSED and case REMANDED.

COMPTON, Justice, dissenting.

The language of Alaska's Implied Consent Statutes, as they read at the time of Pena's and Rychart's arrests, demonstrates that the statutes were intended to apply only in the context of searches incident to arrest. A person was deemed to consent to testing when "lawfully arrested." AS 28.-35.031. The tests were to be given "at the direction of a law enforcement officer," *id.,* and sanctions accrued when "a person under arrest refuse[d] the request of a law enforcement officer to submit to a chemical test ...." AS 28.35.032(a).

There is simply nothing in the statutes to indicate that the legislature contemplated restricting searches pursuant to warrant, which derive from the statutory authority of the court, rather than the power of an officer to search an individual at the time of arrest. Numerous reasons have been advanced for the existence of implied consent statutes, but there is none which would support the majority's application of the prohibition against nonconsensual blood testing to searches performed pursuant to warrant.

As we noted in *Lundquist v. Department of Public Safety,* 674 P.2d 780, 783 (Alaska 1983), the legislature's purpose in enacting the Implied Consent Statutes is not clear. There we explained that such statutes were originally intended to aid police in obtaining evidence of intoxication at a time when the United States Supreme Court had put in doubt the constitutionality of non-consensual searches for evidence inside an individual's body. However, many states, including Alaska, did not pass such laws until after the Supreme Court had made clear in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), that forcibly extracting blood for the purpose of determining a driver's blood alcohol content did not offend the Constitution. In *Lundquist* we found convincing one commentator's statement that "[t]he most likely explanation for the wide-spread adoption of implied consent by the states despite the *Schmerber* decision is that the implied consent language was familiar and had been approved by the courts." *Id.* at 783, quoting Note, *Driving While Intoxicated and the Right to Counsel: The Case Against Implied Consent,* 58 Texas L.Rev. 935, 944 (1980). Another related explanation is that in 1967 the federal Department of Transportation promulgated regulations requiring some form of implied consent law before a state could establish its eligibility to receive federal highway funds. *See* Note, *supra* at 942–43. The federal regulations were written after *Schmerber,* and did not require a provision prohibiting testing if no consent was given, 33 Fed.Reg. 16,562 (1968), but it is not too difficult to imagine that states, in the process of complying with the federal regulations, would look to pre-*Schmerber* implied consent statutes as models.

Other courts, in interpreting implied consent laws enacted after *Schmerber,* have decided that their purpose is to prevent the violent confrontations that might arise between police officers and drunken motorists if the officers attempted to administer, or have administered, chemical tests by force. *See* Note, *supra* at 941–2. Appellant Rychart asserts that this is the purpose of Alaska's Implied Consent Statutes, and that it is served equally by limiting searches incident to arrest and searches

---

*State,* 659 P.2d 1206 (Alaska 1983), and *Palmer v. State,* 604 P.2d 1106 (Alaska 1979). These cases, however, did not involve situations where the driver refused to be tested. In *Copelin* the issue addressed was whether a driver could consult his attorney before deciding whether to submit to the test. *Palmer* involved the question of whether a driver must be advised of his right to have an independent blood test administered. The Implied Consent Statute does not create a right to refuse testing that is exercisable at no cost. Instead, the statute creates a "power" (not a "right") that extracts a penalty upon the driver when exercised. *Copelin v. State,* 659 P.2d 1206, 1212–1213.

pursuant to warrant. When a search warrant has been issued by a neutral magistrate, however, much of the potential for conflict is reduced. The accused is made aware that a judicial officer has ordered the search; he therefore knows he is not being singled out for persecution by a police officer. Citizens are expected to submit peacefully to such court orders. As the State notes in its brief on appeal, the distinction is similar to that made by "knock and announce statutes," which are also intended to reduce the likelihood of violence between police officers and suspects. *See Lockwood v. State*, 591 P.2d 969, 971 (Alaska 1979).

Thus, there is no conceivable purpose in extending the provisions of AS 28.35.032 to searches pursuant to warrant. Further, to proscribe the use of search warrants as a means of obtaining evidence of a driver's insobriety, would be to place allegedly drunken drivers in an exalted class of criminal defendants, protected by the law from every means of obtaining the most important evidence against them. It is incredible that the legislature could have intended such a result. The 1982 amendment to the implied consent statutes permitting chemical tests to be administered over a defendant's objections in cases where another party has been killed or seriously injured, AS 28.35.035, supports this conclusion, because it indicates that the legislature did not intend such a result even in the context of a search incident to arrest.

The language of AS 09.65.095 provides additional evidence that searches pursuant to warrant were intended to be outside the scope of the prohibition contained in AS 28.35.032. At the time of Pena's and Rychart's arrests, it protected health care providers from civil or criminal actions for battery arising from the act of taking a blood sample when an arresting officer had "a search warrant or court order authorizing the taking of the blood sample." After the 1982 amendments to the Implied Consent Statutes, AS 09.65.095 was also amended to include protection for health care providers who acted "at the request of a police officer under the circumstances

specified in AS 28.35.035." Thus, the legislature saw the taking of blood samples at the request of a police officer, which was legitimized under the circumstances described in AS 28.35.035 in 1982, to be distinguishable from the taking of blood samples at the direction of a judicial officer or court.

In short, I see every reason "to draw the distinction drawn by the court of appeals," *Pena v. State*, 684 P.2d 864, 867 (Alaska 1984), in this case, and cannot agree with this court's conclusion that the implied consent statutes in effect at the time of the defendants' arrests precluded the "admission into evidence of chemical sobriety test results obtained pursuant to a search warrant after the arrestee has refused to take such a test." *Pena v. State*, 684 P.2d at 866. Therefore, I dissent from the order reversing the defendants' convictions and remanding the cases for new trials.