Thomas G. TURK, Appellant,

v.

STATE of Alaska, Appellee.

No. 6807.

Court of Appeals of Alaska.

May 6, 1983.

Mary E. Greene, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Charles M. Merriner, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Thomas Turk was convicted of robbery in the first degree. AS 11.41.500(a)(1). Turk appeals arguing that the trial court erred in failing to specifically enforce an agreement between Turk and the district attorney whereby Turk was allegedly permitted to plea to a lesser offense. He also argues that the trial court erred in excluding both expert and lay testimony regarding the effect of his alcohol and drug use on his ability to formulate the specific intent necessary for conviction of first-degree robbery. We hold that the trial court erred in excluding Turk's expert witness and therefore remand for a new trial.

## FACTS

John Vaughan was working the late shift in the Fairbanks Qwik Stop on May 31, 1981. At approximately midnight, Thomas Turk entered the store, waited for the customers to leave and then approached Vau-

ghan and mumbled something indistinguishable. Turk pulled a knife and demanded money from the cash drawer. Vaughan pulled his own knife and told Turk he would "have to knife fight" for the money. Turk evaluated the situation and left. At trial, Vaughan testified that Turk did not appear drunk but did seem high on something. About half an hour after his confrontation with Vaughan, Turk went to the Pastime Cafe and ordered a meal. He fell asleep with his head in his food. When the waitress could not wake him up, she called the police. Officer Stepp jostled Turk to arouse him. Turk woke up and left under his own power.

Shortly after Turk left the cafe, he was found by Officer Stepp passed out over the steering wheel of his car. The car was running, had no lights illuminated, and was in the wrong lane of traffic. By this time Officer Stepp had been informed about a robbery and the description of the suspect "basically matched" Turk, including the heavy white gloves Turk was wearing. Turk was again hard to awaken. His speech was slow and slurred and he was pretty groggy. In Turk's car, Officer Stepp found a knife later identified as the one used in the robbery.

Officer Stepp took Turk to the police station where, within an hour, three breathalyzer tests were administered. Each showed .05% or less blood alcohol. At trial, witnesses testified that on May 31, Turk had consumed a quantity of drugs. He had started drinking beer, then he took citra forte syrup, percodan, dilaudid, injections of cocaine, valium, Tylenol with codeine, and mepergan fortis. Turk's friends had considered taking Turk to the hospital because the effect on him had been extreme.

Turk was charged with first-degree robbery. His trial ended in a hung jury. Shortly after the jury was discharged, the prosecutor, defense counsel and the trial judge met in open court and the following discussion transpired:

THE COURT: Where do we go from here? We call the calendar clerk and we get another time for trial, don't we?

MR. DOWNES [Turk's counsel]: Your Honor, I have talked to Mr. Call about this, and I've talked to my client. I think this matter can be resolved with a plea to a lesser felony, but I don't know if Mr. Call wants to go through with that. I've talked to my client. I want to make sure that my client would know that he's waiving his right to a trial by jury, and I'm sure that we'll resolve this case, and probably a plea to a lesser charge of third degree assault, and I just want to talk with him, and set this on for change of plea, if its agreeable with Mr. Call, for 1:30 on Monday.

THE COURT: I won't be here. I guess another judge could do it.

MR. DOWNES: Is that agreeable, Mr. Call, because I'll talk to my client right now, so he'll understand what he's waiving.

MR. CALL: Yes, we'll agree to that.

MR. DOWNES: Can we go off record?

The parties then talked about an appropriate time and, due to conflicts in the court schedule, settled on 2:30 that afternoon. Mr. Downes indicated his expectation that Mr. Call would "prepare an information."

When the parties reconvened that afternoon, Mr. Downes accused Mr. Call of reneging on the agreement. Mr. Call's response was as follows:

MR. CALL: Your Honor, the conditions that precede a plea agreement is the Court accepting a plea agreement. That did not occur. Whatever I said in court, the record will speak for itself. Since speaking in court earlier, I spoke with one of the jurors who called me and informed me about the progress of the jury deliberations, and the fact that it was eleven to one for a conviction. The one gentleman there with the long hair and the beard who failed to disclose his own experience with drug addiction for a period of time, and hung up that jury. Some of the jurors, during the course of the deliberations were willing to go down to assault III, if they could obtain a verdict, but a substantial majority of the jurors were not willing to drop the robbery in

the first degree down to assault in the third degree, being convinced, as eleven of them were that robbery in the first degree was the crime that had been committed. This is a crime committed by the defendant, who was on parole, after having been convicted in '79 of two armed robberies where property, money was taken at gunpoint. It appears to us and to me that the public interest, and in light of the fact, and in light of the feelings of most of the eleven out of twelve of the jurors, that the public interest would not be well served by this kind of plea agreement we're talking about. Therefore, I'm not willing to do it voluntarily. If the court thinks I had offered the plea agreement, then I would request that the Court reject it, because I do not think it's in the public interest. I think the court heard, fully justifies a robbery in the first degree conviction, and that if we were to present it to another jury of fair minded citizens and were adequately to voir dire a group of honest members of citizens of this community who were called as jurors, that we could obtain a conviction for robbery in the first degree upon a retrial, and that's what we're prepared to do, and I'd ask the Court to merely set this down for a new trial, at some point down the road within four months from today.

Mr. Downes objected and demanded specific enforcement of the "plea agreement." The court recessed and considered the matter and then denied the motion for specific enforcement. The court said:

Without further argument. While I might think personally as a matter of an agreement between the defense and the State that the agreement should be—or that the State should not renege on any agreement, I can't compel them to go through with it. Your motion's denied.

During the second trial, counsel for Turk announced an intention to call Dr. Francis Wayland, an expert on the effects of drugs on the ability to formulate specific intent. The state asked for additional time to interview Dr. Wayland in order to determine whether to ask for a continuance to enable

it to obtain rebuttal testimony. The state pointed out that the trial court had issued a specific pretrial order in this case which provided in relevant part:

Within ten days after the entry of this Order defense counsel or his assistant assigned to the case, shall disclose to the prosecuting attorney and make available for inspection and copying, any reports or statements of experts made in connection with the case, including results of physical or mental examinations and of scientific tests, experiments or comparisons which are intended by the defendant to be used at trial (Rule 16(c)(2), Rules of Criminal Procedure). Such materials coming into his possession or control after that date shall be disclosed promptly without the necessity of a request or further order of this court.

The trial court concluded that the defendant violated the pretrial order and consequently precluded Dr. Wayland from testifying.

Later the defense called Steven Webb, a friend of Turk's and also a drug abuser, to testify on the effects of drugs on people's ability to formulate specific intent. Specifically, Webb was to testify that while under the influence of many drugs, one could be awake but not know what one was doing. The court ruled that Webb was not an expert as defined in Alaska Rule of Evidence 702 and that his purported testimony did not comply with Alaska Rule of Evidence 701. Therefore Webb's proposed testimony was excluded.

## PLEA AGREEMENT

 The record is unclear regarding the alleged plea agreement between the defendant and the state. It appears that some kind of agreement may have been reached, but it is unclear what the terms of that agreement might have been. The trial court made no specific finding of fact regarding an agreement between the parties. Turk concedes, nevertheless, that he did not detrimentally rely on any representation by the state and did not give up anything of

value in return for the agreement. Consequently, even if we assume *arguendo* that an agreement existed, we would not grant specific enforcement. While a defendant is entitled to a remedy if the state breaches a plea agreement, the customary remedy is permission for the defendant to withdraw his plea and proceed to trial. Here no plea was entered and Turk was tried. Under these circumstances, Turk's requested relief is unwarranted.

## EXPERT WITNESS

The pretrial order did not expressly require defendants to list their expert witnesses. It merely required them to exchange reports prepared by experts, if any, prior to the omnibus hearing. There is nothing in this record to suggest that Dr. Wayland ever prepared a report or was even aware of this case prior to the omnibus hearing. There is nothing in the record to contradict Turk's counsel's assertion that he only learned of Dr. Wayland's availability on the day in question and immediately informed the prosecutor of his intent to call Dr. Wayland. In the absence of contradicting evidence, it is at least arguable that Turk complied with the provision in the order which required that "such materials coming into his possession or control after that date shall be disclosed promptly without the necessity of a request or further order of this court." Thus, the pretrial order would not appear to justify excluding this expert testimony.

The state's real objection was that it was surprised by Turk's late notice of an intent to call Dr. Wayland. In this regard, it is particularly important to note that Alaska Rule of Evidence 403 follows the comparable federal rule in not authorizing the exclusion of evidence because of "surprise." Professor Saltzburg explains the decision as follows:

The rule does not enumerate surprise as a ground for exclusion, in this respect following Wigmore's view of the common law .... While it can scarcely be doubted that claims of unfair surprise may still be justified despite procedural requirements of notice and instrumentalities of discovery (especially in criminal cases), the granting of a continuance is a more appropriate remedy than exclusion of the evidence.

Commentary to A.R.E. 403 at 70 (citations omitted).

 Our decisions are in accord. In *State v. Lewis,* 632 P.2d 547, 550 (Alaska App.1981), we held that exclusion of significant evidence should be used by the trial court only in rare situations as a remedy for discovery abuses. Implicit in our decision is the requirement that a trial court contemplating exclusion of evidence or dismissal of a case or defense due to late discovery must first determine whether a continuance provides a reasonable alternative. In the instant case, the state never requested the exclusion of evidence. In fact, at the time the court ruled, the state's attorney had not even determined that a continuance would be necessary, asking only for an opportunity to interview Dr. Wayland before deciding. Under these circumstances, we find that the trial court abused its discretion in denying Turk the right to call Dr. Wayland.

We are not suggesting that the trial court could not impose sanctions on defense counsel in an appropriate case for an unreasonable delay in disclosing expert witnesses. Our language from *Lewis* gives guidance:

We are not unmindful of the need for trial judges to maintain control over discovery and to assure orderly and timely compliance with the rules of criminal procedure. We are, furthermore, not unsympathetic with Judge Hodge's [sic] efforts to deal in this case with a troublesome situation involving repeated discovery violations by the prosecution which, on the whole, displayed a lamentable disregard of its duty to comply with the rules of discovery and the court's orders aimed at assuring compliance with the rules. However, we believe that the trial court's authority to impose costs and monetary sanctions and its ability to exercise the contempt powers provided for by law afford a sufficient range of alternatives by which the seriousness of such

discovery violations could be impressed upon the prosecution. In the absence of substantial prejudice to the defendant's case, we believe that appropriate redress for discovery violations should normally lie in the use of these alternatives.

*Id.* at 551 (footnote omitted).

We have carefully considered Turk's offer of proof and cannot conclude that the exclusion of Dr. Wayland's testimony was harmless error. We must reverse and remand for a new trial. On remand, Turk will have the opportunity to consider calling expert witnesses. The issue of lay testimony may not arise. We therefore express no opinion on the issue of whether the trial court abused its discretion in excluding the testimony of Mr. Webb. A.R.E. 701–702.

The decision of the superior court is REVERSED and this case REMANDED for a new trial.