**Clifton Douglas SMAKER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–302.**

Court of Appeals of Alaska.

Feb. 15, 1985.

Mary E. Greene, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Clifton Douglas Smaker was convicted, after a jury trial, of assault in the third degree. AS 11.41.220(a)(1). He appeals, contending that the trial court erred in refusing to allow him to call a defense witness whose name was not disclosed at jury *voir dire*. We reverse.

At the time of the alleged assault, around 3:00 p.m. on July 7, 1983, both Smaker and the victim, Grafton Solomon, were working in Fort Yukon's new city building. According to Solomon, Smaker entered the city dispatch room, where Solomon was working, and in the midst of a verbal altercation stepped toward Solomon and brought a welded chain link rod down within eighteen inches of Solomon's head. Smaker admitted exchanging angry words but denied having the metal rod or threatening Solomon.

Trial commenced in Fort Yukon on October 31, 1983. During jury *voir dire* the names of witnesses who were going to be called to testify were put on a board, and jurors were asked to leave if they felt that they could not fairly hear the case due to knowledge of the persons involved. The state presented its case-in-chief that afternoon, and before the end of the day Smaker called his first witness. When the trial court reconvened the following morning, defense counsel informed the court that after talking with several people the previous evening, he and Smaker had learned that City Manager Vera James should be called as a witness. Smaker suggested that the court could question members of the jury panel to determine if any jurors would in fact be incapable of rendering a fair verdict due to their acquaintance with James. Smaker further indicated he might be willing to stipulate to trial by fewer than twelve jurors if necessary to enable James to testify. The state objected, arguing that James was mentioned in the police report and known to the defense but not listed as a potential witness at *voir dire*. The state claimed prejudice since James, as the city manager, was an influential person and likely to be known to the jurors.

Superior Court Judge James R. Blair denied Smaker's request, treating it as a "motion to supplement the witness list."

> THE COURT: You do have a duty to name the witnesses at jury selection. And I've always required that for nine years and I've told every counsel that they have a duty to do it and that's why I told you to put the li—witnesses on the board. You know, there's no way to pick

a jury in a town this size without telling people who the witnesses are going to be.... Both sides are entitled to a fair *voir dire* in selecting a jury. That's especially true in a small community such as Fort Yukon. The record will reflect the difficulty we had getting a jury and the numerous people who were related to various people who were listed on the board. The only way to ... allow the state to be in a fair position again would be to go through the whole *voir dire* with each and every jury (sic) individually and I'm just not going to go through that again. The purpose of *voir dire* is to allow an open and full disclosure as to who might be involved and if, at the time of *voir dire*, one side or the other side does not [know] who their witnesses are going to be, why, that's just a problem that they're going to have to face.

Smaker made an offer of proof for the record that Vera James would testify that on the afternoon of the alleged assault Grafton Solomon came into her office and told her that he was going to have Smaker arrested for assault and that, since Solomon was friendly with the district attorney, they would "get [Smaker] this time." Smaker also offered to prove that James would testify that she was in her office near the dispatch room on the afternoon of the alleged assault and would have been able to hear raised voices if there had been an oral altercation. Judge Blair acknowledged that James "would be an important witness in the case if she would testify." However, the judge refused to allow James to testify.

■ The right of a defendant to present his own witnesses to establish a defense is a fundamental element of due process of law. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023 (1967). While the right to call and examine witnesses is not absolute,

> and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process ... its denial or significant diminution calls into question the ultimate " 'integrity of the fact-finding process' " and requires that the competing interests be closely examined.

*Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297, 309 (1973), *quoting Berger v. California*, 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969).

In this case Judge Blair precluded Smaker from calling Vera James as a witness because she was not named during jury selection and because of the likelihood that she would be known to the jury. He denied the motion before he heard Smaker's offer of proof and without determining whether any member of the jury would actually be unable to impartially serve if James were called as a defense witness.

■ Without deciding whether the interest asserted by Judge Blair—that of assuring an impartial jury panel—might under other circumstances be sufficient to restrict a defendant's right to call and examine witnesses,[1] it was clearly an abuse of discretion to preclude the calling of a witness without first ascertaining that such a restriction was actually necessary. The trial court was at least under an obligation to poll the jury panel as to its knowledge of Vera James:[2]

> [The] discretion [to exclude witnesses] may be exercised only after the court has made an adequate inquiry into all of the surrounding circumstances, and failure of the trial court to inquire into the circumstances constitutes error.

*State v. Bright*, 229 Kan. 185, 623 P.2d 917, 923 (Kan.1981), *quoting Adams v.*

---

1. We similarly need not decide whether an order requiring the counsel in a criminal prosecution to disclose the names of prospective defense witnesses during the jury selection process is violative of the accused's right against self-incrimination. *Cf. Scott v. State*, 519 P.2d 774 (Alaska 1974).

2. This conclusion is in accord with our holdings that exclusion of significant evidence should be used as a remedy for discovery abuses only in rare situations where there is no reasonable alternative. *See, e.g., Turk v. State*, 662 P.2d 997, 1000 (Alaska App.1983); *State v. Lewis*, 632 P.2d 547, 550 (Alaska App.1981).

*State*, 366 So.2d 1236 (Fla.App.1979). *Cf. People v. Willis*, 667 P.2d 246, 247 (Colo. App.1983) (preclusion ruling constitutes an abuse of discretion where it prevents defendant from negating prosecution's testimony).

The state maintains that any error was harmless since Smaker's main defense was that he did not confront Solomon with the metal rod, and Vera James could not testify as to whether Smaker possessed the rod since she did not actually witness the altercation. However, James would have testified as to statements made to her by Solomon which were inconsistent with Solomon's own testimony and therefore not hearsay under Evidence Rule 801(d). These statements would have served to impeach Solomon's testimony that for thirty minutes after the assault he was too shaken to call the police. The statements would also have impeached Solomon's credibility, since he denied even making them. More importantly, James' testimony would have put some evidence before the jury that Solomon had not been placed "in fear of imminent serious physical injury," an essential element of assault in the third degree, but, instead, was exploiting an altercation to avenge a personal grudge.

■ The trial court recognized that Vera James was an important witness. In a case such as this, where the credibility of the defendant is pitted against the credibility of the complaining witness, it cannot be said that the preclusion of James' testimony did not appreciably affect the jury's verdict. *Love v. State*, 457 P.2d 622, 630–32 (Alaska 1969).

The conviction is REVERSED.