Ronald **RUSSELL**, Appellant,

v.

**MUNICIPALITY OF
ANCHORAGE**, Appellee.

No. A–145.

Court of Appeals of Alaska.

Sept. 20, 1985.

Tina Kobayashi, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Dennis P. Cummings, Asst. Municipal Pros., James Ottinger, Municipal Pros., and Jerry Wertzbaugher, Municipal Atty., Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Ronald Russell was convicted of driving while intoxicated and driving with a blood-alcohol level exceeding .10, Anchorage Municipal Code § 9.28.020(A) (hereinafter cited as AMC). He appeals, contending that his seizure and subsequent arrest violated his rights under the state and federal constitutions, and that the trial court erred in admitting expert evidence regarding a blood-alcohol test performed at Russell's request. We affirm.

## FACTS

On May 6, 1983, at approximately 5:20 a.m., Officers Cooper and Roseman observed an occupied vehicle in an Anchorage parking lot. Officer Cooper observed the backup lights turn on and the vehicle back up a few feet. He noticed that there was a mist on the rear window of the car. Cooper stopped the vehicle and spoke to its driver, Ronald Russell. He noticed that Russell had a strong odor of intoxicants coming from his person, watery and glassy eyes, and that his coordination appeared impaired. Officer Roseman gave Russell two verbal tests which were not observed by Officer Cooper. Roseman informed Cooper of the test results. Cooper then asked Russell to perform the finger-to-nose test. Russell failed this test and Cooper arrested him. Russell was transported to the police station and was asked to submit to an intoximeter examination. He willingly submitted to the intoximeter exam. After the intoximeter examination was completed, Officer Lyon, who performed the examination, informed Russell that he could obtain an independent test of the accuracy of the intoximeter result by having a sample of his blood drawn by a qualified person of his choosing at one of the local hospitals, and then having the blood tested for alcohol. Russell indicated that he wished to have an independent test done. He was transported by the police to Humana Hospital where he signed a consent form and blood was drawn.

## DISCUSSION

### I. The Investigatory Stop

■ Russell argues that he was the victim of an invalid investigatory stop, and, consequently, that the case against him should be dismissed. He reasons that the Alaska Supreme Court has authorized investigatory stops only where an officer has a reasonable suspicion that an imminent public danger exists. *See Ebona v. State*, 577 P.2d 698 (Alaska 1978). Officers Cooper and Roseman allegedly stopped Russell because his misty window obscured his vision and created a potential traffic hazard, in violation of Anchorage Municipal Code 9.44.360.[1] The trial court apparently determined that the officers were reasonable in stopping Russell for this purpose, even though it was unlikely that a jury would convict him had the case gone to trial. We agree that a misted rear window, by analogy to an equipment defect, would justify a temporary stop to permit the defect to be remedied. *See also State v. Chisholm*, 39 Wash.App. 864, 696 P.2d 41 (1985) (police may temporarily stop vehicle to warn occupants that item of their property is endangered). In the instant case, it would have been a relatively easy matter for Russell to clear off his back window. We note that there is no suggestion, and the trial court did not find, that the officers' concern about the misty window was a subterfuge to enable the police to seize Russell for other purposes. *See Chisholm*, 696 P.2d at 43.

■ The officers' right to stop Russell to ensure that the obscured rear window could be cleared put them in position to legitimately observe Russell and discover that he had an odor of alcohol about his breath, appeared glassy-eyed, and suffered impaired coordination. These additional facts warranted the officers' shift of focus from the obscured rear window to the risk that Russell might be driving while intoxi-

cated. This additional information warranted the officers' asking Russell to submit to field-sobriety tests. *See Romo v. Anchorage*, 697 P.2d 1065 (Alaska App. 1985).

### II. The Arrest

■ Russell next argues that he was the victim of an invalid arrest. We disagree. Before he may make an arrest, an officer must be aware of facts and circumstances which are sufficient in themselves to warrant a prudent person in believing an offense has been or is being committed. *Pistro v. State*, 590 P.2d 884 (Alaska 1979); *Nome v. Ailak*, 570 P.2d 162 (Alaska 1977); *McCoy v. State*, 491 P.2d 127 (Alaska 1971). In addition to Russell's appearance and the strong odor of alcohol, the officers were aware of his inability to perform certain tests of manual dexterity. Under the circumstances, they had sufficient information to warrant a prudent person in believing that Russell might be in violation of statutes limiting the right of intoxicated persons to drive. The following comment from a recent opinion is relevant to this decision:

> We have found a few cases from other jurisdictions holding that a smell of alcohol standing alone is insufficient to establish probable cause to arrest a suspect for driving while intoxicated. [Citations omitted.] We believe that these cases are distinguishable. First of all, we are not speaking here of probable cause to arrest, but only of reasonable suspicion to investigate. The standards are quite different. [Citations omitted.] More importantly, the offense of driving with a blood-alcohol level of .10 differs substantially from an offense which requires proof that a driver's ability to control his vehicle was in fact impaired, *i.e.*, a statute that requires proof of erratic driving. And this is so even if the impaired driving statute permits an inference of DWI

1. Anchorage Municipal Code 9.44.360 provides:
   *Defective windshields and rear windows prohibited.*
       It is unlawful to operate any motor vehicle upon a street within the municipality when

the windshield or rear window is in such a defective condition as to impair the driver's vision either to the front or rear.

where the state proves a .10 blood level, the case in Colorado and Ohio. The legislature in enacting the .10 statutes clearly found that people who have consumed sufficient alcohol, but do not necessarily manifest impairment in their driving, are nevertheless substantially dangerous. [Citation omitted.]

*Romo*, 697 P.2d at 1069 n.1.

■ The foregoing answers Russell's contention that it was necessary that the officers observe him driving erratically before they could arrest him. While an odor of alcohol or other indicia that a person had been recently drinking, standing alone, may not warrant anything beyond an investigatory stop, the additional evidence in this case that Russell's coordination was impaired and that he had recently been driving was sufficient to warrant his arrest. *Cf. Smith v. State*, 695 P.2d 1360 (Okla.Crim.App.1985) (police officer who smelled alcohol on defendant's breath and noticed that he had bloodshot eyes had probable cause to arrest defendant for public intoxication).

### III. Testimony of Dr. Propst Concerning Russell's Blood Test

#### A. Failure to Make Discovery

Russell argues that the trial court improperly permitted the municipality to call a previously undisclosed expert witness, Dr. Michael T. Propst of Humana Hospital, to testify concerning the analysis of the sample of Russell's blood taken following his arrest. Propst testified later, as part of the prosecution's rebuttal, concerning the analysis of the sample of Russell's blood taken at the hospital on the morning of his arrest. Apparently, the prosecution did not give Russell written notice of its intent to call Dr. Propst as part of its case-in-chief but informed Russell's counsel orally either just before or during trial. During the prosecution's case-in-chief, Russell brought the matter before the judge and objected to admission of testimony by Dr. Propst. He contended that the prosecution had given him insufficient notice, and also that the

blood test was privileged. The court overruled the objection based on privilege, but indicated that it would grant defense counsel a continuance in order to prepare for cross-examination of the expert. The prosecutor then indicated that it would not call the expert as part of its case-in-chief but would call the doctor as a rebuttal witness if Russell put on a defense. No request for a continuance was ever made.

On appeal, Russell renews his argument that Dr. Propst's expert testimony violated his discovery rights under Criminal Rules 16(b)(1)(iv) (prosecutor must disclose to defendant before trial any expert reports including scientific tests) and 16(f)(2)(i) (discovery must be made prior to omnibus hearing). Russell relies upon *Howe v. State*, 589 P.2d 421, 423 (Alaska 1979), and *McCurry v. State*, 538 P.2d 100, 106 (Alaska 1975), for the proposition that the state must make pretrial disclosure of its experts whether it intends to call them as part of the case-in-chief or on rebuttal. Russell relies particularly on the following language in *Howe:*

A continuance, however, is at best an awkward and disruptive substitute for pre-trial discovery. In the case of technical reports the time needed to prepare a response may be too long to hold the jury and a mistrial may be the result. Moreover, under certain circumstances such as those involving strategic decisions concerning the conduct of the trial a continuance is not an effective substitute for pre-trial discovery. *See Stevens v. State*, 582 P.2d 621, 625 n.9 (Alaska 1978).

589 P.2d at 424.

■ We agree with Russell that the prosecution should have given him pretrial notice of its intent to call Dr. Propst as a witness. Alaska R. of Crim.P. 16(b)(1)(i), (iv). We find no abuse of discretion, however, in the trial court's decision to permit Dr. Propst to testify. This conclusion is in accord with our repeated holdings that the exclusion of significant evidence should be used as a remedy for discovery abuses only in rare situations where there is no reason-

able alternative. *Smaker v. State*, 695 P.2d 238, 240 n.2 (Alaska App.1985); *Turk v. State*, 662 P.2d 997, 1000 (Alaska App. 1983); *State v. Lewis*, 632 P.2d 547, 550 (Alaska App.1981). The prosecution sought to use Dr. Propst as the custodian of the blood test results in order to obtain the test results' admission under the business record exception to the hearsay rule. *See* A.R.E. 803(6). The record establishes that the defendant had sufficient advance notice to prepare a cross-examination regarding the validity of the blood test results. Since Russell and his attorney knew the results of the blood test and also knew of the prosecution's intent to call Dr. Propst and introduce the blood test results before Russell put on his case-in-chief and testified, Russell was not subjected to the surprise criticized by the supreme court in *Stevens v. State*, 582 P.2d 621, 624 n.9 (Alaska 1978), where undisclosed prior inconsistent statements were used to impeach the defendant's alibi witnesses.

### B. Privilege

Russell's privilege argument is more troubling. Alaska Evidence Rule 402 provides:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States or of this state, by enactments of the Alaska Legislature, by these rules, or by other rules adopted by the Alaska Supreme Court. Evidence which is not relevant is not admissible.

Dr. Propst's testimony that the examination of Russell's blood disclosed a blood-alcohol level in excess of the statutory restriction was certainly relevant.[2] Thus Dr. Propst's testimony is admissible "except as otherwise provided" by the constitution, a statute, or a court rule.

■ Russell argues that his consent to the blood test was invalid and that the test thereby constituted a warrantless seizure of his blood in violation of the fourth amendment to the United States Constitution and comparable provisions of our state constitution, since he was unaware that the test result could be admitted into evidence against him. However, at the time Russell's blood was drawn, he was validly under arrest. The taking of his blood could arguably be justified under the fourth amendment as a search incident to arrest. *See Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (blood test of suspected drunk driver valid as search incident to arrest); *cf. McCracken v. State*, 685 P.2d 1275 (Alaska App.1984). Russell's blood was drawn sufficiently close in time to his arrest to satisfy the requirements of this exception to the warrant requirement. *See McCoy v. State*, 491 P.2d 127, 130–31 (Alaska 1971). It is therefore unnecessary to decide whether Russell's "consent" to an independent test constituted a waiver of his fourth amendment rights. *See McCracken v. State*, 685 P.2d at 1279 (where a search is valid because incident to an arrest, it is irrelevant wheth-

---

**2.** Russell vigorously argues that while possibly relevant as evidence in the municipality's case-in-chief, the evidence was not relevant for rebuttal purposes. Russell notes that he did testify on direct examination that he was not intoxicated at the time he was stopped and arrested. He contends, however, that Dr. Propst's testimony did not, strictly speaking, rebut this testimony. We disagree with this contention. If evidence that a defendant was driving erratically corroborates the accuracy of a breathalyzer, *Byrne v. State*, 654 P.2d 795 (Alaska App.1982), and evidence that a person appeared sober impeaches a breathalyzer result, *Denison v. Anchorage*, 630 P.2d 1001 (Alaska App.1981), then evidence of an adverse blood test would tend to rebut testimony that a person was not intoxicated. In any

event, we think the distinction in context is irrelevant. Russell's argument is predicated, in our view, on a misinterpretation of the Alaska Supreme Court's decision in *McCurry v. State*, 538 P.2d 100, 106 (Alaska 1975). There the court held, subject to certain limitations, that the state was not under an obligation to disclose rebuttal witnesses under the discovery rules, *but see Howe v. State*, 589 P.2d 421, 423 (Alaska 1979). The municipality was clearly obligated to disclose Dr. Propst's expected testimony. Had adequate notice been given, the municipality could have used Dr. Propst in its case-in-chief without violating *McCurry* or *Howe*. Under the circumstances, any distinction between evidence-in-chief and rebuttal evidence is simply irrelevant.

er or not defendant consents to the search).[3]

Russell argues next that the blood sample was privileged under the rules of evidence. Alaska Rule of Evidence 501 provides:

Except as otherwise provided by the Constitution of the United States or of this state, by enactments of the Alaska Legislature, or by these or other rules promulgated by the Alaska Supreme Court, no person, organization, or entity has a privilege to:

(1) refuse to be a witness; or

(2) refuse to disclose any matter; or

(3) refuse to produce any object or writing; or

(4) prevent another from being a witness or disclosing any matter or producing any object or writing.

Russell relies in part on the lawyer-client privilege. A.R.E. 503.[4] Alaska Rule of Evidence 503(b) provides in relevant part:

*General Rule of Privilege.* A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and the lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

It is clear, however, that the personnel at Humana Hospital do not qualify as the representative of Russell or Russell's lawyer for purposes of the blood test involved. No lawyer participated in Russell's decision to have a blood test and the lawyer-client privilege has never been extended to preclude testimony by experts consulted by a client without the involvement of an attorney. It is thus unnecessary for us to determine whether Russell's furnishing blood to employees of Humana Hospital constituted a "confidential communication made for the purpose of facilitating the rendition of professional legal services to the client." We find no attorney-client privilege.[5]

---

3. Alaska Statute 28.35.032 provides that if a person refuses to submit to a chemical test of his breath no test shall be given. This section has been interpreted to apply to blood tests. *Pena v. State,* 684 P.2d 864 (Alaska 1984); *Anchorage v. Geber,* 592 P.2d 1187 (Alaska 1979). This statute has no applicability to Russell, however, since he agreed to a breath test and a blood test. Consequently, the statutory intent to avoid confrontations between police seeking blood samples and intoxicated individuals resisting blood sampling was not involved. *Cf. State v. Pitchford,* 10 Kan.App.2d 293, 697 P.2d 896, 898 (1985) (implied consent statute does not preclude blood test unless police ask arrestee to submit to a blood or breath test and he refuses). In his concurrence, Judge Coats makes a plausible argument that Russell consented to the blood test validating it against any claimed violation of his fourth amendment rights. I prefer to view the concerns voiced in *Pena* and *Geber* regarding AS 28.35.032 as totally distinct from the constitutional law governing search and seizure. In my view, statutory limitations on searches incident to arrest do not create fourth amendment problems where they would not otherwise exist.

4. The parties also mention the physician-patient privilege in their briefs. A.R.E. 504. It is clearly inapplicable to criminal proceedings including misdemeanor prosecutions however. *See* A.R.E. 504(d)(7) (physician patient privilege inapplicable to criminal proceedings). Cases like *State v. Pitchford,* 10 Kan.App.2d 293, 697 P.2d 896 (1985) (blood test, taken as part of treatment of injured drunk-driving suspect brought to hospital by police, is privileged under Kansas physician-patient privilege and is therefore not admissible in prosecution of suspect), are therefore inapplicable.

5. Russell's reliance on *Houston v. State,* 602 P.2d 784 (Alaska 1979), is misplaced. There, the supreme court denied the state pretrial discovery of a defense psychiatric expert's report in the absence of evidence that the defendant intended to rely upon the expert at trial. The opinion turns primarily on the specific language of our discovery rules which are inapplicable here. The prosecutor did not learn of Dr. Propst through a discovery from the defendant; he independently developed the lead. While it is true that the supreme court speaks of the attorney-client privilege in resolving the dis-

Russell next argues that the implied consent law privileges any blood sample evaluation independently procured by a defendant. He relies on AS 28.35.033(e) which provides:

> (e) The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of the person's own choosing administer a chemical test in addition to the test administered at the direction of a law enforcement officer. The failure or inability to obtain an additional test by a person does not preclude the admission of evidence relating to the test taken at the direction of a law enforcement officer; the fact that the person under arrest sought to obtain such an additional test, and failed or was unable so to do, is likewise admissible in evidence.[6]

Russell notes that we referred to the right to obtain an additional blood evaluation as an "independent" test in *Anchorage v. Serrano*, 649 P.2d 256 (Alaska App. 1982), and infers that "independent" means "privileged." Russell is incorrect. In *Lauderdale v. State*, 548 P.2d 376 (Alaska 1976), the supreme court noted that a blood-alcohol test has become virtually conclusive proof of guilt of one charged with driving while intoxicated. Noting the sub-

stantial risk that negligence in performing the test or some chicanery in disclosing its result could substantially prejudice an innocent defendant, the court held that some means must be afforded a defendant to independently verify the accuracy of the test. We used the term "independent" in *Serrano* with the same meaning, that is, "not subject to state or municipal manipulation." "Independent" is therefore not synonymous with "privileged."

The evidence rules establish a strong public policy that all relevant evidence should be available to the trier of fact to ensure a fair and just decision. It is only where some major public policy clearly articulated in a constitutional provision, statute, or court rule clearly outweighs the truth-seeking function that a privilege should be recognized. Privileges in litigation are not favored and should be narrowly construed. *Herbert v. Lando*, 441 U.S. 153, 175–76, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115, 133 (1979). *See also United States v. Nixon*, 418 U.S. 683, 711–13, 94 S.Ct. 3090, 3109–10, 41 L.Ed.2d 1039, 1065–67 (1974). Alaska Statute 28.35.033(a) does not expressly establish an evidentiary privilege. It would be inappropriate for us to construe it as establishing by implication such

covery dispute, it does so in the context of a psychiatric examination which necessarily consists of confidential communications.

**6.** While a blood test may be within the physician-patient privilege, that privilege does not apply in criminal cases. *See* A.R.E. 504(d)(7). The language in AS 28.35.033(e) which provides that "the fact that the person under arrest sought to obtain such an additional test, and failed or was unable so to do, is likewise admissible in evidence" serves to distinguish this statute from the one discussed in certain Vermont cases which Russell relies upon. *See, e.g., State v. Normandy*, 143 Vt. 383, 465 A.2d 1358 (1983) (finding prejudicial error in allowing jury to learn that defendant obtained sample for independent blood test); *State v. Raymond*, 139 Vt. 464, 431 A.2d 453 (1981) (error to admit into evidence implied consent form given to motorists which showed that an extra blood sample had been taken for his independent analysis if he so chose). The Vermont statute provides in relevant part:

> When a breath test which is intended to be introduced in evidence is taken or when

blood is withdrawn, a sufficient amount of breath or blood, as the case may be, shall be taken to enable the person, at his option, to have made an independent analysis of the sample, and shall be held for no more than sixty days from the date the sample was taken.

> Any time within that period, the defendant may direct that the sample be sent to an independent laboratory of his choosing for an independent analysis. *At no time shall the defendant or any agent of the defendant handle or otherwise have access to the sample.* The results of any independent analysis made at the direction of the defendant *shall be sent only to the defendant or his attorney.* Analysis of the person's breath or blood which is available to that person for independent analysis shall be considered valid under the provisions of this section when performed according to methods approved by the state department of health.

23 Vt.Stat.Ann. § 1203(a) (Supp.1984) (emphasis supplied).

a privilege. *See, e.g., State v. Contreras,* 674 P.2d 792, 796–97 n.10 (Alaska App. 1983), *petition for hearing granted* (Alaska, April 5, 1984) (evidentiary privileges should be established by rule after notice and comment by interested parties; a judicial opinion is a poor vehicle for the articulation of a new privilege).[7]

### IV. Admonition to the Jury

■■■ After successfully moving for the suppression of the results of Russell's intoximeter test, defense counsel asked that the jury be admonished "as to the effect to be given the alleged test results."

The trial court instructed the jury as follows:

> The production of evidence in court is covered by rules of law. From time to time, it's been my duty as judge to rule on the admissibility of evidence. You must not concern yourself for the reasons for these rulings and you're not to consider any testimony or exhibits to which an objection was sustained or testimony or exhibits which were ordered stricken.

Russell did not request a further admonition to the jury regarding the intoximeter test. On appeal, he argues that the trial court erred by not giving a further admonition. He does not suggest the form that the admonition should have taken. We are satisfied that no plain error occurred. Alaska R. Crim. P. 47(b).

The judgment of the district court is AFFIRMED.

### COATS, J., concurs.

7. Our conclusion in this case makes it unnecessary for us to address an issue hitherto unresolved by appellate decision in this jurisdiction: whether the legislature by statute can establish a privilege without violating the supreme court's rule-making power. *See, e.g., State v. R.H.,* 683 P.2d 269, 276 n.8 (Alaska App.1984). In *Pena v. State,* 684 P.2d 864 (Alaska 1984), and *Anchorage v. Geber,* 592 P.2d 1187 (Alaska 1979), the court interpreted AS 28.35.032 as prohibiting a chemical or other test of a person's breath where he or she refused to consent. The court went on to hold inadmissible evidence obtained in violation of this prohibition. While the con-

BRYNER, C.J., dissents.

### COATS, Judge, concurring.

I concur with Judge Singleton's opinion. However, I disagree that Russell's blood test can be justified as a search incident to an arrest. The blood test could not have been taken by the police except at Russell's request under AS 28.35.033(e). In my view, to hold that Russell was subject to a blood test as a search incident to an arrest would be inconsistent with AS 28.35.032 which provides that if a person refuses to submit to a chemical test of his breath, no test shall be given. *See Pena v. State,* 684 P.2d 864 (Alaska 1984). It seems to me that even though Russell took a breath test, the police were not authorized to conduct a blood test incident to an arrest unless Russell wanted to take a blood test under AS 28.35.033(e). Here, Russell agreed to take the test, so the test was valid under AS 28.35.033(e). The record in this case supports a finding that Russell consented to the test. In order to consent to the test, Russell did not have to understand that the blood test could later be used in evidence against him. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (consent to search valid even though consenter not specifically informed of right to withhold consent). Therefore, I would find that Russell consented to the blood test rather than that the blood test was valid as a search incident to an arrest. In all other respects I agree with Judge Singleton's opinion.

### BRYNER, Chief Judge, dissenting.

nection with the evidence rules is not spelled out, it appears that the court was finding that the suppressed evidence was "illegally obtained" and therefore inadmissible. A.R.E. 412. No statute expressly prohibits a blood test of a person under arrest who agrees to a law enforcement officer's request that he submit to a chemical test of his breath. Nor does any statute purport to limit prosecution access to the results of independent blood tests performed pursuant to AS 28.35.033(c). Thus, *Pena* and *Geber* are inapplicable to this case. *See* n.3 *supra.*

I dissent.

I believe AS 28.35.033(e) creates an implied privilege as to the results of an independent blood test taken pursuant to that statute.[1] The obvious purpose of AS 28.-35.033(e) is to foster compliance with the implied consent law by assuring the availability of a reliable, independent blood test to DWI arrestees who might otherwise be skeptical about the prospect of submitting to the breath test required under the implied consent statutes.[2] To read AS 28.35.-033(e) as permitting routine disclosure to the prosecution of blood test results is to defeat the very purpose of the statute, since such a reading conditions the independent test on the arrestee's willingness to run the risk of providing the prosecution with additional evidence of guilt. I doubt that many arrestees will be willing to take this risk, and, consequently, few will see the opportunity for an independent blood test as a realistic incentive to submit to the required breath test. The inevitable result of the majority's holding in this case will simply be to increase the number of people who refuse to submit to a breath test.

**S.B., Appellant,**

v.

---

1. Where the accused, having obtained a blood test, elects to use the results in evidence, the privilege arising under AS 28.35.033(e) would, of course, be waived. Similarly, if evidentiary use of blood test results is contemplated by the defense, those results will be subject to discovery under Criminal Rule 16 to the same extent as other test results prepared for trial at the direction of the accused or counsel for the accused.

2. This purpose is reflected in Vermont's independent blood test statute, which is similar to Alaska's statute but expressly privileges blood test results. *See* 23 Vt.Stat.Ann. § 1203(a); *State v. Normandy,* 143 Vt. 383, 465 A.2d 1358 (1983); *State v. Raymond,* 139 Vt. 464, 431 A.2d 453 (1981).