**Donald CUNNINGHAM, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2533.**

Court of Appeals of Alaska.

Feb. 10, 1989.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Marlin D. Smith, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

COATS, Judge.

A jury convicted Donald Cunningham of driving while intoxicated (DWI). AS 28.35.-030. Cunningham appeals the denial of his motion to suppress the results of a chemical test of his blood. We affirm.

On August 9, 1987, Officer Raymond Miller investigated an automobile accident in the vicinity of Cushman Street and Van Horn Road in Fairbanks. Upon arriving at the scene, Miller observed that Cunningham, who had been involved in the accident, appeared to be intoxicated. Miller administered field sobriety tests which Cunningham failed. Cunningham's arrest for DWI followed.

Officer Miller transported Cunningham to the Alaska State Troopers Headquarters and asked him to take an Intoximeter exam. Cunningham willingly took the examination. After the completion of the Intoximeter exam, Cunningham was informed that he could obtain an independent test of the accuracy of the Intoximeter result by having a sample of his blood drawn and tested for alcohol by a qualified person of his own choosing at one of the local hospitals. Cunningham indicated that he wished to have an independent test performed. He was transported to Fairbanks Memorial Hospital, where he signed a consent form. A medical technologist drew two samples of blood. The technologist then stored the two untested blood samples at the hospital.

On December 2, 1987, Cunningham moved to suppress the results of the Intoximeter test on the ground that he had consumed a mint within twenty minutes before taking the test in contravention of the procedures set forth in 7 AAC 30.020(1).[1] On

---

1. 7 AAC 30.020(1) provides that the Intoximeter machine operator must:

December 11, 1987, the state filed a non-opposition to the motion to suppress. District Court Judge Jane F. Kauvar granted the motion on December 16, 1987.

On December 10, 1987, the state applied for and obtained a search warrant to seize the untested blood samples held at the Fairbanks Memorial Hospital. The state seized the samples pursuant to the search warrant on the same date. On December 21, 1987, Susan Feller, of the state crime lab, tested one of the two samples which had been seized pursuant to the warrant. The test of the blood sample resulted in a reading of .167 percent of alcohol in Cunningham's blood. The second tube was not tested.

On February 11, 1988, Cunningham moved to suppress "all evidence flowing from his consent to have blood drawn in this case, including blood seized pursuant to [the search warrant]." Cunningham argued, *inter alia,* that the blood sample test results are privileged under AS 28.35.033(e) (emphasis added), which reads:

> *The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of the person's own choosing administer a chemical test in addition to the test administered at the direction of a law enforcement officer.* The failure or inability to obtain an additional test by a person does not preclude the admission of evidence relating to the test taken at the direction of a law enforcement officer; the fact that the person under arrest sought to obtain such an additional test, and failed or was unable to due so, is likewise admissible in evidence.

Cunningham argued that *Anchorage v. Serrano,* 649 P.2d 256 (Alaska App.1982), which provides that a DWI arrestee is entitled to an independent test of his blood to test the accuracy of the breathalyzer results, supports this interpretation. In Cunningham's view, the right to an independent test required by *Serrano* is for the DWI arrestee's benefit. He argues that the state should not have access to the results. Finally, Cunningham contended that suppression of the blood test results was warranted because his consent to take the blood test resulted from and was tainted by the deficient Intoximeter test. Judge Kauvar denied the motion to suppress and Cunningham's blood test results were admitted at trial. On appeal, Cunningham raises essentially the same contentions he raised in the trial court.

Our opinion in *Russell v. Anchorage,* 706 P.2d 687 (Alaska App.1985) is dispositive of the issues in the instant case. In *Russell,* a DWI arrestee completed the Intoximeter exam and subsequently consented to have an independent test performed. He was taken to Humana Hospital where a sample of his blood was drawn and tested by medical personnel. *Id.* at 688, 690. At trial, Russell sought to preclude testimony about the results of the analysis of his blood sample for several reasons. First, Russell contended that because he was unaware at the time he consented that the test results could be admitted into evidence against him, his consent to the blood test was invalid as a warrantless seizure in contravention of the fourth amendment. We rejected Russell's argument.[2]

Russell, relying on the language of AS 28.35.033(e) and his right to an independent test under *Serrano,* next argued that the implied consent law privileged any blood sample evaluation independently taken by a defendant. We again rejected Russell's argument. Although AS 28.35.032(a)[3] specif-

---

observe the person to be tested, for at least 20 minutes immediately before testing, to ensure that the person does not regurgitate or place anything in his or her mouth during that period.

**2.** In *Russell,* Judge Singleton concluded that the blood test results were properly obtained because the blood was seized as a search incident to an arrest. *Id.* at 691. In a concurring opinion, I concluded that the blood was properly obtained because Russell consented to having his blood drawn for testing purposes, even though he may not have anticipated that the state would be able to introduce the test results in evidence against him.

**3.** Alaska Statute 28.35.032(a) provides in relevant part:

If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test under AS 28.35.031(a), after be-

ically requires that the police perform a blood test only with the DWI arrestee's consent, we noted that the admission of the testimony about the test result was proper because Russell had in fact consented to the blood test. *Russell,* 706 P.2d at 692 n. 3; *id.* at 694 (Coats, J., concurring). In addition, we pointed out that *Serrano's* reference to "independent" means "not subject to state or municipal manipulation" rather than privileged. *Id.* at 693. Finally, we pointed out that privileges in litigation are not favored and should be narrowly construed. In our view, "only where some major public policy clearly articulated in a constitutional provision, statute, or court rule clearly outweighs the truth-seeking function [should] a privilege be recognized." *Id.* We concluded that AS 28.35.-033(e) does not expressly establish an evidentiary privilege; nor does the provision create a privilege by implication. *Id.* at 693–94.

Cunningham contends that the instant case is distinguishable from *Russell* in two ways. First, Cunningham claims that unlike Russell, he consented only to the drawing of the blood sample, not to the actual testing of the sample. Cunningham is in error. Cunningham signed a consent form which specifically indicated that he wished to have a sample of his blood drawn and tested. Second, Cunningham points out that unlike the situation in *Russell,* the Intoximeter exam result in the instant case was ultimately suppressed due to Cunningham's consumption of a mint. In Cunningham's view, his consent to have a blood sample drawn must also be suppressed as the fruit of the poisonous tree. We find this argument to be unpersuasive.

The arresting officers were entitled, as a matter of law, to administer the breath test unless Cunningham refused to take the test. *See* AS 28.35.031 (implied consent). Although the state was willing to agree

that the breath test should be suppressed, apparently because the accuracy of that test could be questioned, there was nothing illegal about the administration of that test. Similarly, there was nothing improper about the fact that Cunningham voluntarily had blood samples drawn from him at the hospital. Although Cunningham may not have anticipated that the results of the breath test ultimately would not be admissible against him at his trial and that the results of the blood test would, this fact does not undermine Cunningham's consent to have the blood samples taken. *See Russell,* 706 P.2d at 694 (Coats, J., concurring).

Judge Bryner, in his concurring opinion, suggests that *Russell* conflicts with the policies of Alaska's implied consent statutes as they are discussed by the supreme court in *Pena v. State,* 684 P.2d 864 (Alaska 1984). In *Pena,* the defendant was arrested on suspicion of DWI. When Pena refused to take a breathalyzer test, the police obtained a search warrant authorizing the taking of a sample of Pena's blood. Pena was then transported to a local hospital where the blood was drawn. *Id.* at 865–66. The Alaska Supreme Court held that evidence of the blood test result was inadmissible because Pena had refused to take the test. In the court's view, the language of AS 28.35.032 prohibits any "chemical sobriety test" when a DWI arrestee declines to consent to testing. *Id.* at 867.

*Pena* is readily distinguishable from the instant case. Cunningham, unlike Pena, consented to the administration of the blood test. No statute expressly prohibits a blood test of a defendant where the defendant consents to a chemical test of his breath, nor does any statute limit prosecution access to the results of an independent test performed pursuant to AS 28.35.033(e); the state is entitled to discover the results

ing advised by the officer that the refusal will, if that person was arrested while operating or driving a motor vehicle for which a driver's license is required, result in the denial or revocation of the license or nonresident privilege to drive, that the refusal may be used against the person in a civil or criminal action

or proceeding arising out of an act alleged to have been committed by the person while operating or driving a motor vehicle or operating an aircraft or a watercraft while intoxicated, and that the refusal is a misdemeanor, a chemical test may not be given, except as provided by AS 28.35.035.

of any independent test actually obtained. Other jurisdictions are apparently in agreement with this view. *See, e.g., State ex rel. McDougall v. Corcoran,* 153 Ariz. 157, 161, 735 P.2d 767, 771 (1987); *State v. Strong,* 504 So.2d 758, 760 (Fla.1987). It therefore appears *Pena* is inapplicable to a resolution of the issues in the present case.

Accordingly, because Cunningham agreed to the administration of the blood test after having been placed under lawful arrest for suspicion of DWI, the admission of Cunningham's blood test result was proper.[4]

The conviction is AFFIRMED.

BRYNER, C.J., concurs.

BRYNER, Chief Judge, concurring.

While I adhere to the views expressed in my dissent in *Russell v. Anchorage,* 706 P.2d 687 (Alaska App.1985), I agree that *Russell* is dispositive here. Accordingly, under the doctrine of *stare decisis,* I join in the result reached by the court in this case. In so doing, however, I would add that in this case the use of a search warrant to obtain Cunningham's blood sample underscores the extent to which this court's ruling in *Russell* conflicts with the basic policies embodied in Alaska's implied consent statutes, as discussed in *Pena v. State,* 684 P.2d 864 (Alaska 1984). *See also State v. Pipkin,* 294 S.C. 336, 364 S.E.2d 464 (1988) (applying an analysis similar to that relied on in *Pena* to reverse a conviction under circumstances virtually indistinguishable from those in Cunningham's case).

---

**4.** Cunningham raises two additional arguments. Cunningham contends that the state's action compelled him to provide evidence against himself. Cunningham's argument ignores *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), in which the Supreme Court held that a blood test, nontestimonial in nature, does not fall within the ambit of the fifth amendment. Cunningham also contends that a case from South Carolina, *State v. Pipkin,* 294 S.C. 336, 364 S.E.2d 464 (1988), supports his argument that his right to an independent test under *Serrano* was violated. Cunningham's reliance on *Pipkin* is misplaced because South Carolina's implied consent statute is different from that found in Alaska.